W. M. & R. J. LOWRY, plaintiffs in error, *vs.* ANDREW M. SLOAN, defendant in error.

<div style="float:right">51  633<br>c125  724</div>

1. Where the charter of a bank provides that judgment obtained on its bills may be levied upon the individual property of its stockholders, upon a return of no property being made as to the bank, a stockholder who has had notice of the suit and made no defense thereto, has had his day in court, and cannot set up any defense which might have been made before judgment.

2. Where an offer of compromise and settlement of pending litigation is made by the complainant to the defendants, and accepted by them, but the contract thus entered into is not executed by the payment of the money, the fact that complainant paid no further attention to the suit, and defendants obtained a judgment against him, affords no ground for an injunction against the enforcement of the execution based on such judgment.

3. Suit was pending in favor of the defendants against the Bank of the Empire State, in which the complainant was a stockholder. In January, 1873, complainant wrote to defendants, proposing, as a compromise, to pay $2,000 00, in full of his liability. This offer was accepted on March 1st. No money being paid, on the 20th of the following May, defendants entered judgments against said bank for $10,668 32. Executions were issued, and returns of no corporate property to be found made. They were then levied on the property of the complainant. He sought to enjoin any further proceedings on said executions, because of the aforesaid compromise, and because the bank made an assignment of its assets for the benefit of its creditors, in 1866, and the defendants, with other creditors, filed a bill in the district court of the United State against said assignee, and recovered a decree for the assets then in hand. A part of these assets were certain bonds of the county of Floyd, which were in litigation. The complainant alleged that their value had never been credited on the aforesaid executions. The injunction was granted as prayed for. Subsequently, on the filing of the defendants' answer and affidavits, the chancellor modified said restraining order, so far as to allow the execution to proceed for $2,000 00:

*Held,* that the chancellor should hear evidence by affidavits as to the solvency of said bonds received by the defendants, and if the same shall be shown to be solvent, direct that the amount thereof be credited on said executions, and that being done, that the injunction be dissolved.

Injunction. Compromise and settlement. Banks. Corporations. Judgments. Before Judge UNDERWOOD. Floyd county. At Chambers. December 3d, 1873.

For the facts of this case, see the decision.

E. N. BROYLES ; R. ARNOLD, for plaintiffs in error.

R. D. HARVEY, for defendant.

WARNER, Chief Justice.

This was a bill filed by the complainant against the defendants, praying for injunction to restrain the defendants from the enforcement of executions issued on judgments obtained against the Bank of the Empire State, of which the complainant was a stockholder. The injunction prayed for having been granted, a motion was made to dissolve the same on the filing of the defendants' answer and affidavits in support thereof. On the hearing of that motion the court modified the injunction, so far as to allow the defendants to collect the sum of $2,000 00 on their executions, and continued the injunction as to the balance due thereon. Whereupon the defendants excepted.

It appears from the record, that on the 20th May, 1873, the defendants, as bill holders of the Bank of the Empire State, obtained judgments against the bank for the sum of $10,668 32, on which executions issued, and a return of *nulla bona* having been made thereon by the sheriff, against the corporation, the same was levied on the property of the complainant as one of the stockholders thereof. The eleventh section of the charter of said bank, declares "that the person and property of the stockholders in said bank, shall be pledged and bound in proportion to the amount of the shares that each individual, or company, may hold in the same, for the ultimate redemption of said bills or notes issued by or from said bank during the time he, she or they may have held such stock, in the same manner as in common commercial cases, or simple cases of debt; that the private or individual property of each stockholder, as well as their joint property, shall be liable as before stated for the redemption of the bills of said bank, and for the payment of all the debts and liabilities

of the same, and when any judgment shall be obtained against said bank, and execution issued thereon, it shall be the duty of the levying officer first to levy the same on the property of said corporation, and to sell the same, and if the proceeds thereof shall be insufficient to pay off said execution, and the return of said officer, of no corporation property, shall be sufficient proof of the same, it shall be the duty of said officer next to levy said execution on the individual property of any stockholder or stockholders, and sell the same until an amount is raised sufficient to pay off said execution, each stockholder only to be liable for the whole indebtedness of the bank in proportion to the amount of his stock, and that any stockholder who pays off any such execution, or part thereof, shall have the right to use and control the same *fi. fa.* against all the other stockholders, so as to collect the ratable share out of each of them." The 18th section of the charter further declares "that those who were stockholders of said bank at the time a list of the stockholders was advertised next before the failure of said bank to redeem its notes on demand, shall be held, considered and taken, as stockholders at the time of such failure, and shall be liable as stockholders according to the provisions of this act, and shall be liable to execution according to the provisions of this act." The several grounds of equity, as alleged in the complainant's bill and the amendments thereto, are very loosely stated, many of them upon information and belief only. The answers of the defendants and the affidavits in support thereof, deny all the material allegations on which the complainant's equity is based, even if the same were sufficient, in view of the terms of the charter of the corporation of which he was a stockholder, to have entitled him to any relief as against the defendant's executions.

1. By the terms of the charter, a judgment against the bank was binding on the complainant as one of the stockholders therein, and it appears from the evidence in the record that he had notice of the suits pending against the bank and declined to make any defense thereto, he therefore, in contemplation of

the law and the provisions of the charter, has had his day in court, so far as the defendants' judgments are concerned. As to the alleged agreement made with William Dougherty, Esq., it does not appear that he represented the present defendants at that time, but represented other parties.

2. In regard to the proposition made by the complainant's solicitor to the defendants' solicitor, in January, 1873, for a compromise and settlement of defendants' claims then in suit, the proposition made was to pay $2,000 00 if defendants would procure a receipt signed by *all* the interested parties, bill holders and judgment creditors. To this proposition the defendants' solicitor replied that he had seen Colonel Akerman, who said his clients would accept the proposition, "and I say my clients will; you may so inform your client." This correspondence commenced in January, and the reply accepting the proposition is dated 1st of March; the judgments were obtained in May thereafter. The complainant alleges that he was misled by this correspondence, and failed to make his defense as he otherwise would have done. It does not affirmatively appear by the complainant's allegations what special grounds of defense he had to the defendants' suits; at least, the same is not alleged with sufficient distinctness to show that he had any legal or valid defense thereto. But the complainant never paid the $2,000 00, or tendered it in payment. The proposition made by the complainant to the defendants for a compromise and settlement, though accepted by the latter, was not *executed* by the former by the payment of the money, and therefore the complainant has no reasonable or equitable ground of complaint, that the defendants took their judgments against him in May. The complainant knew that the money that the defendants had consented to accept, in pursuance of his proposition made in January, had not been paid; in other words, that the agreement to compromise the defendants' claims had not been *executed* on his part by the payment of the money: Code, sec. 2881.

3. In relation to the transfer of the assets of the bank, of which the complainant complains, it appears that the bank

made an assignment of its assets for the benefit of its credit-
ors in 1866; that H. D. Cothran, the assignee of the bank,
who was the complainant's representative, (he being one of
the stockholders therein,) had applied a portion of the assets
to the purchase of the bills of the bank, amounting to the
sum of $56,392 00, and had paid some other claims against
the bank, including attorney's fees and other expenses. After-
wards, the defendants and other bill holders filed a bill in the
district court of the United States against the bank, the as-
signee thereof, *et al.*, and a decree was rendered by said court
in May, 1872, adjudging and decreeing that the present defend-
ants, W. M. & R. J. Lowry, and the other bill holders named
therein, do recover of H. D. Cothran, assignee of the Bank of
the Empire State, the assets now in the hands of said assignee,
to-wit: (describing the same,) to be distributed among them in
proportion to the amount of their respective claims, and that
said assignee, on complying with said decree, is hereby fully
discharged and acquitted from any and all liability in conse-
quence of having been assignee of said bank. The bank of
which the complainant was a stockholder having been a party
to this decree, it is binding upon him unless it can be success-
fully attacked for fraud, of which there is no sufficient allega-
tion in complainant's bill. The defendants admit, in their
answer, that they have received from their share of the assets
of the bank, turned over to them under said decree of the
district court, the sum of $790 00, which has been credited
on their executions against the complainant, and express their
willingness to credit any other amount they may receive from
said assets thereon, though they allege that the balance of the
assets are worthless, except the Floyd county bonds, which, at
the time of filing their answer, they allege were in litigation
in the courts as to the liability of the county to pay the same.
It appears from the record that the entire indebtedness of the
bank is about the sum of $60,000 00; that the complainant
was the owner of two hundred shares of its stock, for which
he is liable to the bill holders thereof as such stockholder.
The defendants having received their *pro rata* share of the

assets of the bank in kind, including the Floyd county bonds, which are not alleged to be worthless, but so far as the record shows, are entirely solvent at the present time, it is the equitable right of the complainant to have the amount of the same, if solvent, credited on the defendants' executions against him. We therefore direct that the chancellor below hear evidence by affidavit as to the solvency of said bonds received by the defendants under the decree of the district court, on reasonable notice being given to the parties, or their solicitors, and if the same shall be shown to be solvent, then the amount thereof to be credited on the executions of the defendants against the complainant, and that being done, the injunction is then to be dissolved, leaving the complainant's bill to remain in court.

Let the judgment of the court below be reversed, with instructions as indicated in this opinion.