## WHEATLEY, receiver, v. GLOVER 'et al.

1 The act of 1838 (Code of 1882, § 1496) did not have the effect to impose upon the stockholders in a bank or other corporation a liability beyond the amount of the stock owned, but merely provided a method by which a stockholder who had transferred his stock might relieve himself of an existing individual liability imposed by the charter of the corporation.

2. Neither was such a liability imposed by the act of 1892 (Acts 1892, p. 55), nor by the act of 1894 (Civil Code, § 1888). These acts simply provided a different manner of discharge from liability from that prescribed in the act of 1838.

3. Prior to 1893 there was no general law of this State declaring the individual liability of stockholders in banks, and whether such liability existed depended upon the provisions of the charter in a given case.

4. The provision in the charter of the Bank of Americus, that "The individual property of the stockholders at the time of suits shall be liable for the ultimate payment of the debts of the company in proportion to the amount of stock owned by each stockholder," renders liable only the individual property of those who are stockholders at the time that suits are brought against the company by its creditors. Stockholders who may have transferred their stock prior to the filing of suits against the company are not individually liable to the creditors of the bank.

5. The additional liability of the shareholders of a bank depends on the terms of the charter; and as such a provision in the charter is in derogation of the common law, it must not be extended beyond the words used.

6. When a charter of a bank provides that "the individual property of the stockholders at the time of suits shall be liable for the ultimate payment of the debts of the company in proportion to the amount of stock owned by each stockholder," a stockholder is not liable who has actually parted with his stock and has transferred it upon the books of the bank before any suit is brought against the bank by a creditor.

7. *Brobston* v. *Downing*, 95 *Ga.* 505, and *Chatham Bank* v. *Brobston*, 99 *Ga.* 801, are overruled, so far as they conflict with any ruling now made.

8. A judgment against a corporation by a court of competent jurisdiction, rendered after due service upon the corporation, is conclusive upon the stockholders so far as the right of the creditor to proceed to have his debt satisfied out of the corporate assets is concerned.

9. Such a judgment is likewise conclusive upon the stockholder in a proceeding by a creditor against the stockholder to compel the payment of an unpaid stock subscription, when the corporate assets are not sufficient to satisfy the debts of the company.

10. When the charter of a corporation provides that the stockholder shall be individually liable for the debts of the corporation, or a given class of debts, a judgment against the corporation in favor of a creditor is not conclusive against a stockholder in a proceeding to enforce the individual liability under the charter, when the stockholder had no notice of the suit nor opportunity to defend.

11. In a proceeding against a stockholder at the instance of a creditor, to enforce the individual liability under the charter, a judgment against the corporation establishes prima facie the amount and validity of the debt. When the stockholder was not a party to the suit against the corporation, and had no opportunity to defend in that suit, he may, by way of defense in the suit against him, set up not only any fact which would absolve him from liability under the charter, but also any fact which would establish that the corporation was not liable upon the debt which was the basis of the judgment.

12. In a suit against a stockholder to enforce ultimate liability for the debts of a corporation as prescribed in the charter, a petition which sets forth that a judgment against the corporation has been rendered, and which fully describes the character of the suit in which the judgment was rendered, and states the amount of the judgment, is not subject to a special demurrer on the ground that the character of the debt on which the judgment was based is not set forth with sufficient particularity. If the stockholder had no notice of the suit and no opportunity to defend, he may, by a plea in the suit against him, set up any matter which would show that he was not liable for the debt upon which the judgment was based, or any matter which would have been the proper subject of a plea by the corporation in the suit against it.

13. Under the act of 1894 (Civil Code, § 1890), the individual liability of the stockholder under a charter imposing such liability is declared to be an asset of the corporation, subject to be enforced by the assignee, receiver, or other officer, having the legal right to collect, marshal, and distribute the assets of the insolvent corporation.

14. The act referred to in the preceding note is remedial in its nature, does not affect any vested right of the creditor, and is applicable in a case where the liability arose prior to the enactment of the statute.

15. The individual liability of a stockholder for the debts of a corporation under the terms of the charter is not extinguished by the expiration of the charter of the corporation.

16. The amendment to the petition did not set forth a new cause of action.

17. While the petition as amended did not pray for the recovery of a specific sum of money against each of the defendants, there was a prayer that recovery be had against each defendant for the par value of his stock, with interest from date the suit was filed; and the averments of the petition were sufficient to show the exact sum for which each defendant would be rendered liable under this prayer.

18. The plaintiff is entitled to recover interest on the amount due by each stockholder, from the date of the filing of the present suit.

19. In a suit against stockholders to enforce individual liability for debts of the bank, imposed by the charter, the period of limitation applicable is twenty years after the right of action accrues, the same being a suit under a statute or act of incorporation, within the meaning of the Civil Code, § 3766.

20. When the charter of a bank declares that the stockholders of a bank shall be individually liable, "at the time of suits," for the ultimate payment of debts of the bank, in a given proportion, no cause of action

arises against the stockholders until there has been a suit by a creditor against the bank, and the statute of limitations does not begin to run in favor of the stockholders until after the date of such a suit.

21. In a suit by the receiver to enforce the individual liability of stockholders imposed by the charter of a corporation, it is not necessary that the petition should allege that the creditors authorized the suit to be brought. All that is necessary is an allegation that the receiver was directed to sue by the court by which he was appointed.

22. It is not necessary in such a suit that the petition under which the receiver was appointed should be exhibited with the petition in the suit by the receiver. Allegations which fully describe the proceedings under which he was appointed are sufficient to show his authority to bring the suit.

23. When a charter of a bank provides that "the individual property of the stockholders" shall be liable for the ultimate payment of debts, etc., a liability is imposed upon a stockholder which may result in a personal judgment against him, binding all of his property at the date of the judgment, and any that may be thereafter acquired; and it is not necessary, in a petition seeking to enforce the liability under the charter, to allege that the stockholder had property, or of what his property consisted.

24. In such a suit an allegation that some of the stockholders are dead and their estates are unrepresented, that others are corporations which are "defunct," and that others are beyond the jurisdiction of the court, sets forth a sufficient reason for omitting them from the suit as parties defendant.

25. The petition as amended set forth a cause of action against the defendants who were stockholders at the time the suit against the bank was filed, and was not subject to any of the objections raised in the special demurrers filed by such parties.

Argued March 1,—Decided May 18, 1906.

Rehearing denied July 5, 1906.

Equitable petition. Before Judge Spence. Sumter superior court. February 22, 1905.

Wheatley, as receiver of the Bank of Americus, brought an equitable petition against that bank and other defendants, alleging: The Bank of Americus was chartered by an act of the General Assembly, October 26, 1870. The capital stock was placed at $100,000, with power to increase it to $500,000, divided into shares of $100 each. The bank was duly organized, with a capital stock of $100,000 paid in. Subsequently it was increased to $150,000, which was likewise paid in. The charter contained the following provision: "The individual property of the stockholders at the time of suits shall be liable for the ultimate payment of the debts of the company in proportion to the amount of stock owned by

each stockholder." The principal place of business of the bank was in the city of Americus, Georgia. In 1893 the bank became hopelessly insolvent, and on January 20, 1893, an equitable petition was filed against the bank by Cooper, Gatewood & Company, and others; praying for the appointment of a receiver to wind up the affairs of the bank. Under this proceeding the plaintiff, on July 8, 1893, was appointed permanent receiver of the assets of the bank. In the petition appears a list of persons who are alleged to be stockholders of the bank on the date the suit above referred to was filed, to wit, January 20, 1893. This list includes the names of the persons, the residences, and the number of shares owned by each. There also appears a list of persons, with the number of shares owned by each, who are alleged to be non-residents of the State, whose residences are unknown; a further list, alleged to contain the names of individuals and corporations who are dead or "defunct," and whose estates are unrepresented, and the number of shares owned by each, and a list of persons, and the number of shares owned by each, who are alleged to have been non-residents of the State, and whose residences are given so that service may be perfected upon them by publication. The petition alleges, that, by appropriate pleadings and decree, all of the creditors of the bank have been ascertained, and decrees rendered in their favor for the amounts due them; and that the aggregate amount so due is $187,702.84. This sum, however, is alleged to be subject to a reduction of 11 32/100 per cent., the amount of a dividend which has been paid to the creditors of the bank out of the assets. The receiver has fully administered the entire assets of the bank and distributed the same according to orders and decrees of the court. All of the property of the bank has been exhausted, and its creditors have no recourse for collecting the balance due them, except from the stockholders, who are by the charter made liable for the ultimate payments of the debts of the bank. The receiver was, by an order of the court passed June 6, 1903, directed to bring this suit against the stockholders. Under the facts above recited and under the terms of the charter, the stockholders of the bank who were such at the time that the original petition was filed against the bank, to wit, January 20, 1893, have become and are now liable for the ultimate payment of its debts, in proportion to the amount of stock owned by each of them. The prayers of the petition are,

that the receiver recover a judgment and decree against such stock-holders of the bank as may be made parties and may be served, "for the amounts which have been recovered against said bank by the creditors of said bank," as set forth in the petition.   The petition was amended so as to describe the persons enumerated as stock-holders, as being stockholders on January 20, 1893, or prior thereto. It was also amended by striking the allegation that service by pub-lication may be had upon the persons enumerated in the last list contained in the original petition, and alleging, in reference to these persons, that they were beyond the jurisdiction of the court. The amendment further alleged, that an exhibit containing a list of the persons, with the number of shares owned by each, was a correct list of the names and the shares of stock of those who were stockholders on January 20, 1893; that the exhibit contained a list of those persons, and the number of shares owned by each, who had held stock in the bank prior to January 20, 1893, but who before that time had transferred the same; that none of the stockholders whose names were contained in the list last referred to had given the notice necessary, under the law, to relieve them from liability for the debts of the bank; and having failed to give such notice, they were still liable.   Exhibited with the petition was an extract from the decree in the suit in which the receiver was appointed, from which it appeared that judgment had been rendered in that suit in favor of creditors of the bank for various amounts; the names of the creditors, the amount of principal due them, and the date from which interest was to run, all being shown in the exhibit to the amendment.

To this petition a number of the defendants filed demurrers, both general and special.   After a hearing on the demurrers, the judge passed an order sustaining the demurrer as to all those por-tions of the petition and the amendment which sought to hold liable the defendants who were stockholders and had transferred their stock prior to January 20, 1893; and as to such of the stockholders as had transferred less than the total of their stock, the suit against them was limited to the number of shares remaining against their names on the books of the bank.   The court sustained a special de-murrer that the petition was defective in failing to specify the nature, character, consideration, date, and details of each and every debt alleged to be due and payable by the bank to the creditors,

with the same particularity that would be required if each of the creditors were suing each defendant separately on a specific debt. All other grounds of demurrer were overruled. The plaintiff excepted to that part of the judgment which sustained the demurrer of the stockholders whose stock had been transferred prior to the date of the suit in which the receiver had been appointed, and the judgment sustaining the special demurrer as to the manner in which the debts of the bank were set forth in the petition. The defendants, by cross-bill, excepted to the judgment overruling the demurrers on other grounds.

*A. L. Miller, B. M. Davis, E. A. Hawkins, Hooper & Dykes,* and *W. P. Wallis,* for plaintiff.

*Lane & Maynard, T. F. Callaway, W. A. Dodson, Allen Fort & Son, Dupont Guerry, J. A. Hixon, Hall & Wimberly, W. J. Grace, J. P. Ross, J. B. Pilsbury, Shipp & Sheppard, W. L. Clay, Osborne & Lawrence, Garrard & Meldrim, Smith, Hammond & Smith, L. F. Garrard,* and *Hal Lawson,* for defendants.

Cobb, P. J. (After stating the foregoing facts.)　1-3. In 1838 the General Assembly passed an act providing a method by which stockholders in banks and other corporations, who "are individually responsible under the charter," might relieve themselves from such liability after the transfer of their stock. Cobb's Dig. 112. The codifiers changed the verbiage of this act, but made no alteration affecting the substance of the law. As it appears in the code it is in the following language: "When a stockholder in any bank or other corporation is individually liable under the charter, and shall transfer his stock, he shall be exempt from such liability, unless he receives a written notice from a creditor within six months after such transfer of his intention to hold him liable; provided, he shall give notice once a month for six months of such transfer, immediately thereafter, in two newspapers in or nearest the place where such institution shall keep its principal office." Code of 1863, § 1445; Code of 1882, § 1496. In 1892 an act was passed amending the section of the code above quoted, by striking therefrom the proviso, and inserting in lieu thereof the following: "provided, he shall within ten days thereafter cause notice of such transfer to be published once a week for four weeks in the newspaper which publishes the sheriff's sales of the county in which such corporation shall keep its principal office." (Acts 1892, p. 55.)

This law was further changed by the act of 1894, which provided that "wherever a stockholder in any bank or other corporation is individually liable under the charter, and shall transfer his stock, he shall be exempt from such liability by such transfer, unless such bank or other corporation shall fail within six months from the date of such transfer." (Acts 1894, p. 76; Civil Code, §1888.) It is clear that none of these acts impose a liability upon the stockholder. Each of them simply provides a method by which a stockholder can relieve himself from a pre-existing liability under the charter of the company of which he is a member. Therefore, in any case where a stockholder has transferred his stock and is sought to be held liable for the debts of the corporation, the charter, and the charter alone, must be looked to in order to determine whether such a liability existed. If the charter imposes a liability, then the question as to whether a stockholder who has transferred his stock has complied with the requirements of the law necessary to relieve him from liability becomes material. If the charter imposes no liability, then it is immaterial whether the stockholder who has transferred his stock has given the notice required by the act of 1838, or by that of 1892 (whichever may have been applicable), or whether the bank fails within six months after the transfer. If the charter imposes no other liability upon the stockholder than to the extent of his stock in the company,—that is, there is no superadded liability upon him individually, and his stock is fully paid up, then a transfer of the stock relieves him from any liability whatever to the creditors of the corporation, the transferee taking his position as a member of the corporation, with all the benefits as well as all the burdens. Prior to the act of 1893 (Civil Code, §§1903-1911) there was no general law of this State regulating the individual liability of stockholders in banks. The superadded liability of the stockholder was, in each instance, prior to that act, dependent upon the provisions of the particular charter. In *Reid* v. *DeJarnette,* 123 *Ga.* 793, Mr. Justice Evans, after a review of a number of bank charters that had been passed prior to 1893, said: "In view of all this legislation on the subject we can not but conclude that the General Assembly intended each act of incorporation to speak for itself."

4. The charter of the Bank of Americus was granted in 1870. If there is any superadded liability upon the stockholders of this

bank, it must therefore be derived from the terms of the charter itself. The charter contains the following provision: "The individual property of the stockholders at the time of suits shall be liable for the ultimate payment of the debts of the company in proportion to the amount of stock owned by each stockholder." (Acts 1870, p. 80.) What stockholders are, then, individually liable for the debts of the Bank of Americus? The charter answers the question. "The stockholders at the time of suits shall be liable." What suits? Suits against the bank by its creditors, or suits against the stockholders for the amount of the superadded liability under the charter? The charter does not in terms answer this question. The answer must be the result of a proper construction of the charter. Such a construction of the charter requires that the answer to this question shall be, suits by creditors of the bank against the bank. Some charters have provided a superadded liability for all the debts of the bank, without reference to when they were contracted. Other charters have provided restricted liability, holding the stockholders responsible for debts contracted during the period that they were stockholders. Under the charter now under consideration it is a restricted liability, the restriction being that a stockholder shall be liable for the ultimate payment of the debts of the bank that existed at the time of the suits. Hence a creditor of the bank who holds a claim against it may look to the stockholder at the time that his suit is filed, for the ultimate payment of his debt, the stockholder being required to pay such a debt in proportion to the amount of stock owned by him. If the expression "time of suits" were construed to mean the time of the suit seeking to hold the stockholder individually responsible, solvent stockholders of an insolvent bank against which suits were pending could escape liability by transferring their stock in the interval between the suits against the bank and the suits against them to enforce their ultimate liability, and the evident purpose of the charter would be completely defeated. The stockholders' liability is for the debts of the bank. The time when this liability attaches is at the time of the suits; and it seems to us clear that this means the time of the suit by a creditor against the bank. As we have already said, any other construction would afford a means to a stockholder to avoid any responsibility whatever, growing out of the individual-liability clause in the charter. Those

stockholders who are declared by the charter to be individually liable for the debts of the bank are so liable, and no others. The court, therefore, did not err in sustaining the demurrer as to those defendants who had transferred their stock prior to the date of the filing of the suit against the bank.

5-7. In *Brobston* v. *Downing, 95 Ga. 505,* it was held, "With or without a clause in the charter restricting the personal statutory liability to the amount of stock at its par value at the time the debt in question was created, the liability exists and continues for any debt incurred by the corporation at any time until the stock-holder who claims to be exempt by reason of having sold and trans-ferred his stock before the debt was created has given notice of such sale conformably to section 1496 of the code." There was no opinion filed in• this case. The headnote above quoted was pre-pared by Mr. Chief Justice Bleckley. Mr. Justice Lumpkin con-curred dubitante in the proposition therein stated. In *Chatham Bank* v. *Brobston, 99 Ga.* 801, the same question arising out the same charter was under consideration. Judge Gober presided in place of Mr. Justice Atkinson, who was disqualified. The ruling in the former case was under review. There is no discussion, in the opinion, as to the propriety of the former ruling. It was ad-hered to for the reason that it was at least satisfactory to Mr. Chief Justice Simmons, who participated in the former decision, and, being a decision by three Justices, could be overruled only by the concurrent voice of the entire bench. In a short explanatory opin-ion rendered by Mr. Justice Lumpkin and Judge Gober, it appears that the former entertained the doubts which he 'had when the former decision was rendered. Judge Gober expressly states his dissatisfaction with the decision, and that if it had not been for the binding effect of the former decision, he would have held that there was no individual liability upon the stockholders of the bank. The individual liability under that charter was a restricted liability. Those stockholders were only individually liable who were such "at the time the debt was created." It is to be re-gretted that in neither case is there an opinion from which can be determined the process of reasoning by which the result was reached. It may be that if there had been such, we would have• been able to appreciate the force of the reasoning and the correct-ness of the conclusion. These decisions being now under review,

it is incumbent upon us to determine, with the lights before us, whether the conclusion then reached is, in our opinion, sound. It is always with hesitation that we overrule the former decisions of this court, and especially decisions rendered by Justices who are so thoroughly capable of reaching a correct conclusion and stating sound reasons for the proposition they lay down as the two Chief Justices who seem to have concurred without hesitation in the two decisions. Having nothing before us but the bare conclusion which they reached, the matter must be determined by us as best we may with the resources at our command. We are not able to concur in the conclusions reached in these two cases. The reasons which constrain us have already been stated. So far as those cases are in conflict with anything which has been said, we overrule them. In the case of Brunswick Terminal Co. v. National Bank of Baltimore, 192 U. S. 386, the Supreme Court of the United States, in dealing with the provision of a bank charter involved in the two cases above referred to, reached a conclusion which was at variance with the decisions of this court. While that court should have followed the decision of this court in construing the laws of this State, whether in their opinion it was right or wrong, still they declined to do so, and decided the case on its merits. It is to be said, in justice to that court, however, that being unfamiliar with the peculiar law of this State as to the binding force of an unanimous decision of this court, they construed the decision in the last case as in effect declaring the question open in this State. Under the laws of this State it was not an open question at that time. However, without reference to this, the reasoning of the Supreme Court of the United States seems to us to be satisfactory, and the conclusion reached by it to be the true law of the case; and being in a position now where we can deal with the case as an open question, we will follow the decision of that court, although it is not binding upon us as authority.

8-11. A judgment against a corporation binds the stockholders, so far as the right of the creditor to enforce his claim against the corporate assets is concerned. In suits resulting in a judgment condemning the corporate assets to the payment of a debt, the stockholder is represented by the corporation, is a privy to the judgment, and is bound thereby. The stockholder is bound to the same extent that a party is bound, and the judgment as to him

conclusively settles the matters in controversy, and the judgment is open to attack only for fraud, want of jurisdiction, or any other reason which would, at law or in equity, be a sufficient reason to set aside the judgment at the instance of a party.   3 Clark & Mar. Corp. 2362.   A judgment against a corporation is likewise conclusive upon a stockholder who in a subsequent suit is sought to be held liable for the amount of an unpaid stock subscription.   *Howard* v. *Glenn,* 85 *Ga.* 238; *Harrell* v. *Blount,* 112 *Ga.* 720.   See note to Thompson v. Reno Sav. Bank, 3 Am. St. R. 814.   The American authorities are not in accord on the question as to whether a judgment in favor of a creditor against a corporation is conclusive in a suit by a creditor to enforce the individual liability of the stockholder imposed by the charter.   The current of American authority seems to establish that the judgment against the corporation is conclusive against the stockholder in such cases, and that it can not be attacked except for fraud, collusion, or want of jurisdiction in the court rendering the judgment.   Taylor on Corp. (5th ed.) §737; 1 Cook on Stockholders (5th ed.), §209; 3 Clark & Mar. Corp. §800; 3 Thomp. Corp. §3392 et seq.; 10 Cyc. 733; Powell *v.* Oregonian R. Co., 2 L. R. A. 270, and note.   In some cases it has been held that the judgment against the corporation is only prima facie evidence of the plaintiff's claim.   In New York it has been held that it would not even be prima facie evidence in a suit against the stockholder to enforce individual liability under the charter. 2 Mor. Corp. (2d ed.) 886-7.   It is settled in this State, as shown by the authorities cited above, that a judgment against the corporation is conclusive against the stockholder to recover the amount of an unpaid subscription; and it has been said that there was no more reason in holding the judgment conclusive in this class of cases than in those cases where the stockholder is sued to enforce the individual liability provided for in the charter.   There is a distinction, however, between the two classes of cases.   When a stockholder is sued for the amount of his unpaid subscription, this is a suit upon a liability to the corporation.   When he is sued upon the individual liability provided for in the charter, it is not a liability to the corporation, but a liability to the creditors.   As to this liability he occupies the position of one ultimately liable when some other person is primarily liable; as, for instance, a surety, a guarantor, or the like.   When under the charter he is only second-

arily liable, the rules in reference to suits against persons secondarily liable would be in principle applicable. A judgment against a party is generally not conclusive against a surety or guarantor, or other person secondarily liable on the obligation. At most it is prima facie evidence of the amount and validity of the debt.

In 1841 the General Assembly passed an act to facilitate the collection of debts against corporations "and the stockholders thereof." Cobb's Dig. 541; Civil Code, §1893 et seq. The first section of this act provided, that within one month after the institution of any suit against a corporation, the plaintiff might publish once a week for four weeks, in a public gazette, notice of the commencement of the suit, and that such publication should operate as notice to each stockholder "for the purposes hereinafter mentioned." The second section provided, that when a judgment was obtained against any corporation, where the private property of the stockholders was bound for the payment of the whole or any part of the debts of the company, execution should first issue against the property of the company, and if this execution was returned with an entry "no corporate property to be found," indorsed thereon, the clerk, upon the application of the plaintiff, accompanied with the certificate hereinafter referred to, should forthwith issue an execution against each stockholder for his ratable part of the debt and costs. The third section provided that the president of the company must furnish to the plaintiff a certificate under oath, showing the names of the stockholders and the number of shares owned by each at the time the judgment was rendered. The fourth section provided that if the president should refuse to give the certificate, or should abscond or conceal himself, the clerk, upon oath being made by the plaintiff to these facts, should issue an execution against the president for the amount of the judgment. The fifth section authorized any stockholder to appear and defend the suit, in the event the officers of the company failed or refused to defend. The sixth section was in the following language: "The defendant or defendants in execution, under the provisions of this act, shall be entitled to an illegality, under the same rules, regulations, and restrictions as defendants are in other cases under the existing laws of this State." The provisions of this section are now embodied in the Civil Code, §1897, with some slight, immaterial change in language. The seventh section of the act declared that it was

46

cumulative of the common law. It is to be noted that under this act notice of the suit against the corporation is to be given each stockholder. It is true that it is notice by publication, but it is nevertheless notice of the suit. Each stockholder is given the right to appear and defend in the event that the officers fail to make proper defense to the action. In *Heard* v. *Sibley,* 52 *Ga.* 310, it is held, that the execution issued against the stockholder, under the provisions of the law above referred to, is only a mode of suit, and that the stockholder, unless the charter otherwise provide, may set up in his illegality any defense that he might make to the merits in a suit brought against him in an ordinary way, and he is not concluded by the judgment against the corporation upon any issue material to his defense. Judge McCay said: "We think a fair construction of these sections of the code [Civil Code, §§ 1892-1898] is that the proceeding therein provided for against the stockholders is only a mode of suit. Section 3371 [Civil Code, § 1893], providing for the notice, said, it shall operate as notice, not of the suit against the corporation, but 'for the purposes hereinafter mentioned.' Those purposes are to get the names of the stockholders to authorize the issue of an execution against each one, for his part, and to *authorize* a defense of the suit by any stockholder if the president fails or refuses. The only point on which any serious difficulty arises is in section 3375 [Civil Code, § 1897]. Do the words 'affidavit of illegality' there mean the affidavit of illegality authorized by section 3664 [Civil Code, § 4736] to executions issued on ordinary judgments? We think not. The cases are wholly dissimilar. The defendant in the ordinary execution has had his day in court by regular, personal service, and copy of the writ. In the cases provided for in the section under discussion, the notice is in a newspaper, after commencement of the suit, and the party had even no right to defend, unless his principal fails or refuses. We think the kind of illegality referred to is the illegality authorized in personal property mortgage executions, steamboat lien executions, and all that class of cases of which we now have so many, where an execution is only a means of commencing a suit, and the defendant making the affidavit has all the rights on the trial as an ordinary defendant. He may plead, amend, and set up his rights in full, and is not bound as to any of his personal rights by the judgment against the corporation any more than he

would have been had such a judgment been granted in the ordinary way against the bank, a return of no property made on it, and then an ordinary suit brought against him, on his charter liability as security for the ultimate redemption of the bills." This is a distinct ruling that the stockholder, although notified in the manner prescribed in the act, is not bound by the judgment; and the concluding words of Judge McCay's opinion indicate that he was of the opinion that, under the general rules of law, the stockholder would not be bound in any event in a suit to enforce individual liability under the charter, in the absence of an express statute rendering him so bound. In *Stone* v. *Davidson,* 56 *Ga.* 181, Judge Jackson said: "In *Heard* v. *Sibley,* however, this court has reasoned to the effect that the issue of the execution, and not this notice by publication, is the beginning of a sort of new suit against the stockholder, and we will not interfere with that ruling or dictum." In *Blackman* v. *Central R. Co.,* 58 *Ga.* 189, Judge Bleckley said: "Except in cases expressly provided for by the code (section 3374) [Civil Code, §1896] stockholders can not plead or defend for the corporation. That the action is groundless and collusive, and that, from motives of fraud or favor on the part of the officers, the corporation fails or refuses to defend, will make no difference. The stockholders may protect all their rights by instituting a proper action of their own. In conducting suits, due regard must be had to the distinction between parties and those who are not parties. A corporation is a separate person from any or all of the stockholders. When it is sued alone, they are not before the court; and they can not interpose in that suit, without express statutory authority. In equity, or possibly at law, under our peculiar jurisprudence, they can take measures, by an original proceeding in their own behalf, to prevent the appropriation of corporate assets to fraudulent claims, though such claims have been, fraudulently, by the connivance of the corporation or its officers, reduced to judgment."

From the act above referred to, as interpreted by this court, it is clearly inferable that it is the policy of this State that a judgment against a corporation shall not bind stockholders in a subsequent suit against them to enforce an individual liability provided for in the charter. If they are not so bound in cases where they have notice of the suit, even though it be only notice by publication,

certainly for a stronger reason they ought not to be held bound where they had no notice whatever. We do not think that there are any rulings of this court which can properly be construed as holding to the contrary of this view. In *Lane* v. *Harris,* 16 *Ga.* 217, a suit was brought against a stockholder in a bank, who, under the charter, was bound for the ultimate redemption of the bills of the bank, and the question was whether the return of nulla bona on the execution against the bank was conclusive upon the stockholder, or merely prima facie evidence. It was held that such an entry was prima facie evidence only, unless it appeared that the stockholder had been given notice that the execution had been placed in the hands of the sheriff with instructions to levy, thus giving the stockholder an opportunity to see that the assets of the bank were really exhausted. In the case of *Force* v. *Dahlonega Tanning Co.,* 22 *Ga.* 86, which again appeared in this court as *Mason* v. *Force,* 30 *Ga.* 99, the charter of the corporation provided that the private property of the stockholders should be bound for the payment of debts of the company, and that any execution issued against the company might be levied upon the private property of the stockholders. It was held that it was not necessary that the stockholder should have notice of the suit against the corporation. Judge Lyon, in the opinion, says: "The legislature clearly intended that a service on the incorporation should be good as against the stockholder, that a judgment and execution good as against the incorporation should be such against the individual members thereof. Such is the enactment. The stockholders can not complain. They accepted the charter, enjoyed its privileges, and they must now stand by all its terms and bear all its burdens." In *Lowry* v. *Sloane,* 51 *Ga.* 633, by the terms of the charter a judgment against the bank was binding against the stockholder, and it also appeared that the stockholder had notice of the suit and declined to make any defense thereto. This was also true in the case of *Lowry* v. *Parsons,* 52 *Ga.* 356. See also, in this connection, *Andrews* v. *Gwinnett Mfg. Co.,* 50 *Ga.* 637. Whatever may be the law in other jurisdictions, or whatever may be the correct rule as to the abstract proposition, it is manifest that under the laws of this State, as indicated by the statute above referred to and the decisions of this court, a stockholder is not bound by a judgment against a corporation in a subsequent suit against him to enforce

the individual liability imposed by the charter, unless the charter expressly declares that he is so bound.

The question then arises, is such a judgment evidence at all against the stockholder, and, if so, to what extent? A judgment against one primarily liable is not conclusive against one secondarily liable, unless the latter had notice of the suit. When such person had no notice of the suit, the judgment, although not conclusive, is prima facie evidence of liability. *Napier* v. *Neal,* 3 *Ga.* 298. See also *Bryant* v. *Owen,* 1 *Ga.* 356, 370; *Brown* v. *Chaney,* 1 *Ga.* 410. Whether the stockholder bound for the ultimate payment of the debts of the company or a portion of them is properly characterized as a guarantor, surety, or second indorser, or otherwise, he is one ultimately liable, and a judgment against the person primarily liable, that is the corporation, is, as against him, presumptively correct as to all matters adjudicated, even though he had no notice of the suit and no opportunity to defend. In a suit against such a stockholder it is therefore only necessary to allege that a judgment has been rendered against the corporation; and the petition need not show the character of the debt upon which the judgment was founded, or other particulars in reference thereto. The stockholder is let in to all the defenses appropriate to one in his position, that is, one ultimately liable, and also to all the defenses the corporation might have set up in the suit against it. Of course he is not concluded as to any defense which is peculiar to his situation, nor would he be concluded as to any defense which the corporation made unsuccessfully, or might have made to the suit against it. We do not think there is any conflict between this view and the ruling made in *Branch* v. *Knapp,* 61 *Ga.* 614. In that case the charter made the property of the stockholders liable "for the ultimate redemption of the bills and notes issued by or from said bank, during the time he, she, or they may hold such stock, in the same manner as in ordinary commercial cases, or simple cases of debt." It was held that the ultimate liability of the stockholder did not attach to a judgment against the corporation, or its assignees, but to the bank bills themselves; and that when the liability is sought to be enforced, the plaintiff must set out and describe the bills or notes, notwithstanding a prior judgment for their payment may have been rendered against the corporation or its assignees. It will be noted that the charter made the stockholder

liable on certain instruments, bills and notes, and further declared that this liability must be enforced as in ordinary commercial suits or simple cases of debt. The charter was therefore properly construed to contemplate a suit on the papers upon which they were to be held liable. The stockholders were not liable for the ultimate payment of debts without regard to their character, but they were to be liable upon the bills or notes as if they were parties to the same. Under the peculiar language of that charter the case was correctly decided. The decision would no doubt have been otherwise if there had been simply a provision for an ultimate liability for debts. It follows that the court erred in sustaining that ground of the special demurrer raising the objection to the petition on account of the fact that the debts upon which the judgments against the bank were founded were not set out in detail, so as to show the character of each.

13, 14. The right of the receiver to maintain the suit is expressly given by the act of 1894 (Civil Code, §1890), and it has been held that this act, being remedial in its nature, is applicable in a case where the liability under the charter arose prior to the passage of the act. *Moore* v. *Ripley,* 106 *Ga.* 556.

15. It has been contended that at common law the dissolution of a charter extinguished all debts due to or from a corporation. A statement to this effect has been made by some of the most learned writers on the common law. These statements, however, have been challenged with the assertion that the authorities relied on to support them do not lay down such a broad rule. Any one interested in the question as to whether this was the common-law rule may find much of interest in what has been said in some of the decisions of this court. See *Thornton* v. *Lane,* 11 *Ga.* 459 ;. *Robinson* v. *Lane,* 19 *Ga.* 338(8), and cit: ; *Hargroves* v. *Chambers,* 30 *Ga.* 581(8), 603, and cit. But this is not a practical question at this time. In 1858 the General Assembly declared that the dissolution of a corporation from any cause shall not in any manner affect any collateral or ultimate or other liability incurred by any of its officers or members. Civil Code, §1887. See also *Robinson* v. *Lane,* supra; *Hargroves* v. *Chambers,* supra.

16. The objection to the amendment to the petition, on the ground that it set forth a new cause of action, was not well taken. The cause of action set forth in the original petition was the in-

dividual liability, under the charter, of the stockholders of the bank. It is true that the pleader was mistaken in the view that the stockholders who had transferred their stock prior to the suit against the bank were liable, as well as those who were stockholders at the time that the suit was filed. The original petition was subject to the objection that it did not show who were the stockholders at the time of the suit. Persons were sued who were not subject to suit. But persons were sued who were subject, and thus those who were subject were put on notice by the original petition that the plaintiff was seeking to hold them liable under the terms of the charter of the bank. The amendment merely separated the defendants into two classes; persons who were stockholders at the time of the suit against the bank, who were originally defendants in the suit and who were proper parties thereto, and persons who had been stockholders and had transferred their stock prior to the institution of the suit against the bank. The plaintiff started with only one cause of action, that is, to hold the persons individually liable who were so liable under the charter. This purpose was adhered to in the amendment. Merely that the pleader has made a mistake and endeavored to charge those who were not liable, along with those who were liable, would not make the original suit fail, nor would it prevent an elimination from the case of those who were not proper parties. The amendment did not constitute a departure in the pleadings. There was no error in overruling the demurrer that the amendment set up a new cause of action. *McDougald* v. *Williford*, 14 *Ga.* 665; *City of Columbus* v. *Anglin*, 120 *Ga.* 785.

17-18. The petition as amended alleged the total amount of the indebtedness of the bank, the name of each creditor and the amount due him on the judgment rendered in his favor against the bank, the name of each person who was a stockholder at the time the suit against the bank was filed, and the number of shares owned by him at that time. The total amount of the debts of the bank was in excess of the total par value of all the capital stock. The prayer of the petition as amended was that the receiver recover from each of the defendants "the full par value of the stock held by said defendants, with interest thereon from November 3, 1903." One ground of the special demurrer was that there was no prayer for a specific sum of money to be recovered against each defendant.

This demurrer was not well taken, for the reason that under the facts alleged it can be clearly seen exactly what amount the plaintiff is seeking to recover from each of the defendants. If the plaintiff has brought suit for a less sum against each of the defendants than under the charter he would be entitled to recover, this affords no ground for complaint at the instance of the defendants. The petition was sufficiently certain as to the amount sought to be recovered against each of the defendants; and if the plaintiff recovers, he will also be entitled to recover interest on these amounts from the date of the filing of the suit. 26 Am. & Eng. Enc. (2d ed.) 1025.

19. One ground of demurrer was that the cause of action set forth in the petition appeared to be barred by the statute of limitations. The suit is upon the liability imposed by a statute. While it is conceded that the liability arises under the charter, it is contended that the individual liability of the stockholder arises out of an implied promise to comply with the provisions of the charter. In such an event the statute of limitations would be four or six years, according to whether the promise be treated as one not in writing, or as a promise in writing, resulting from the acceptance of the stock certificate. In Carroll *v.* Green, 92 U. S. 509, the Supreme Court of the United States, in dealing with a provision in the charter of a South Carolina bank, which provided that in the event of the failure of the bank the stockholders should be individually liable for a sum not exceeding in value double the amount of their respective shares, held that the liability under the charter arose from the acceptance of the act creating the corporation, and the implied promise upon the part of the stockholders to comply with its terms, and that the statute of limitations as to suits on promises would apply. See also Aldrich *v.* McLain (C. C. A., 9th Ct.), 106 Fed. 791. There are also other authorities to the same effect. If the question were one of first impression, it might be difficult of determination, but it is not an open question in this State. In *Lane* v. *Morris,* 10 *Ga.* 162, it was held that the cause of action of a billholder against a stockholder, arising under a bank charter providing for the ultimate redemption of the bills issued by the bank, was founded on a statute which would be considered in the nature of a specialty, and such a suit would not be barred until twenty years. In *Thornton* v. *Lane,* 11 *Ga.* 459, there

was a ruling to the same effect. In the opinion (p. 497) Judge Lumpkin calls attention to the intimation thrown out in *Lane* v. *Morris,* 8 *Ga.* 478 (8), that the period of limitation applicable to such a suit would be twenty years, and that in the later case of *Lane* v. *Morris,* 10 *Ga.* 162, there was a distinct ruling to the effect that the liability under the charter would be considered in the nature of a specialty, and not barred until twenty years had elapsed. Judge Lumpkin says (p. 498), "To this judgment we still adhere, with unshaken confidence in its soundness." In *Neal* v. *Moultrie,* 12 *Ga.* 104, a personal liability imposed by the charter upon the directors of a bank was declared to be a statutory liability, and not barred until after twenty years. There was a ruling to the same effect in *Banks* v. *Darden,* 18 *Ga.* 318. In *Robinson* v. *Bealle,* 20 *Ga.* 310, only two Judges presided, and they were divided in opinion on the question as to the statute of limitations applicable to suits brought against stockholders to enforce the individual liability under the charter, for the redemption of bills issued by the bank. Judge Lumpkin adhered to the opinion expressed in the former case. Judge Benning contended that six years was the period, upon the idea that the bill was the foundation of the suit, the stockholders were mere sureties, and whatever period of limitations was applicable to the principal was also applicable to the sureties. In *Hargroves* v. *Chambers,* 30 *Ga.* 580, the suit was against the directors of a bank, to recover upon an individual liability imposed by the charter, when the amount of the debts exceeded three times the capital stock. It was held that this liability was statutory, and not barred until after twenty years. In the opinion (p. 599) Judge Lyon said: "This question was adjudicated directly, as to stockholders, in *Lane* v. *Morris,* 10 *Ga.* 164, and in *Thornton* v. *Lane,* 11 *Ga.* 459, and, as to directors, in *Neil* v. *Briggs,* 12 *Ga.* 104; nor have those decisions been disturbed or doubted by any of the subsequent cases. They must stand therefore as settled." See also *Ga. Masonic Ins. Co.* v. *Davis,* 63 *Ga.* 471; Brunswick Terminal Co. *v.* Baltimore Bank, 99 Fed. 645 (40 R. A. 625). Section 3766 of the Civil Code is applicable to this case. It is there declared: "All suits for the enforcement of rights accruing to individuals under statutes, acts of incorporation, or by operation of law, shall be brought within twenty years after the right of action accrues." See, in this connection, *Savannah Canal*

Co. v. Shuman, 98 Ga. 171; Bigby v. Douglas, 123 Ga. 635, and cit.

20. The next question is, when did the cause of action arise? It did not arise upon the creation of the debt by the bank, for the provision in the charter is not an unrestricted liability for debts. There can be no suit until there is a liability. Under the charter of the Bank of Americus the stockholders were not liable for the payment of any debts until the institution of a suit, and therefore the statute would not begin to run against the bank until a suit against it was filed. It may be that the limitation would not begin to run until the actual insolvency of the bank. See Bennett v. Thorn (Wash.), 68 L. R. A. 113. But it is not necessary to determine this question in the present case. This suit was filed within twenty years after the suit against the bank, as well as within that time after the actual insolvency of the bank.

21. An objection raised to the petition is that it does not allege any authority on the part of the receiver from the creditors of the bank to sue in their behalf. The petition does allege that the receiver was expressly directed by the court to bring the suit. Under the act of 1894 (Civil Code, §1890), the receiver represents the creditors. He acts under the direction of the court, and it is not necessary that he should allege any other authority than the order of the court from which he received his appointment.

22. An objection was raised by the special demurrer that the petition did not have attached thereto as an exhibit the proceedings in the suit in which the receiver was appointed. This was without merit. Graham v. Dahlonega Gold Mining Co., 71 Ga. 296.

23. The individual-liability clause in the charter of the Bank of Americus was such as to authorize a personal judgment against the stockholders, binding their individual property. When the charter says, "the individual property of stockholders," etc., shall be liable, it does not mean that a suit to enforce this liability must be a suit seeking to subject specific property of the stockholder to this liability; and therefore it is not necessary in such a suit to allege that the stockholder has property, or of what the property consists.

24. In a suit of the character involved in the present case, all stockholders who are in life and within the jurisdiction of the court should be made parties. If persons who were stockholders have died and their estates are unrepresented, or are corporations and are

"defunct," or are beyond the jurisdiction of the court, an allegation should be made showing these facts, which would be a sufficient reason for omitting such persons from the suit as parties defendant. *Brobston* v. *Downing, 95 Ga. 505(2)*.

25. Some of the defendants who had been stockholders, but who had transferred their stock before the suit against the bank was filed, were national banks. One ground of their demurrer is that a national bank can not be a stockholder in another corporation. It is not necessary to decide this question. Under the view that we have taken of the case, all persons who were not stockholders at the time that suit against the bank was filed were properly stricken, and an examination of the list of stockholders at that time shows that it embraces no national banks.

The record embraces a multitude of demurrers. What has been said disposes of all the questions raised by any of these demurrers which merit any elaborate discussion. The petition as amended set forth a cause of action against the stockholders who were such at the time the suit against the bank was filed, and was not subject to any of the special demurrers raised by any of such defendants.

*Judgment on main bill in part affirmed, in part reversed. Judgment on cross-bill affirmed. All the Justices concur, except Lumpkin, J., disqualified.*

### ON MOTION FOR REHEARING.

COBB, P. J. A rehearing is asked upon the ground that the court failed to pass upon a demurrer filed by the Savannah Bank and Trust Company. It is said, in the motion, that the Savannah Bank and Trust Company filed a demurrer in which it was set up that that company, under its charter, had no authority to become a stockholder in the Bank of Americus, and that it therefore should be stricken from the case as a defendant. Since the motion for a rehearing was filed, we have searched the record from end to end more than once, and have been unable to find therein a demurrer of this company on this ground. The record discloses two demurrers filed by it, but in neither of them does any such ground appear. As the record was voluminous, and it is possible that the demurrer might have been overlooked even after careful examination, we have taken the precaution to cause the clerk of the superior court to certify to this court copies of all demurrers filed in his office by this defendant. Under this order the clerk has trans-

mitted simply a copy of the two demurrers above referred to. Of course we can not entertain this ground of the motion for a rehearing.

It is further asked in the motion that a rehearing be granted upon the proposition contained in the nineteenth headnote, which declares that the period of limitations applicable in the case was twenty years, the suit being under a statute, or act of incorporation. In *Seaboard Air-Line Ry.* v. *Jones,* 119 *Ga.* 907, (8), it was said, "A rehearing will be granted on the motion of the losing party, only when it appears that the court has overlooked a material fact in the record, a statute, or a decision which is controlling as authority and which would require a different judgment from that rendered." The application in the present case is merely one to be reheard on a question made in the record, and which was argued in the briefs filed by some of the counsel in the case. Counsel seeking a rehearing, however, call attention to the fact that in the briefs filed by them they stated that they did not consider the question of the statute of limitations ripe for decision, but were prepared to present arguments on the same whenever the petition was amended so as to set out the various causes of action of the different creditors. It was also said, in the oral argument, that they were prepared at any time to make argument upon the question, but they did not consider this question then before the court. It is averred in the motion for a rehearing that when this statement was made by counsel the court was silent, and from this silence counsel presumed that the court acquiesced in the view then presented. The mere silence of the court could not be considered as an acquiescence in the statement of counsel. At that stage of the case counsel were better informed as to what was contained in the record, and what questions were in the record, than the court possibly could have been. Upon an examination of the record it was found that there were demurrers filed by different parties raising the question as to the statute of limitations, and these demurrers were insisted upon in briefs which were filed by some of the counsel. It was therefore the duty of the court to decide these questions. We can not grant a rehearing now upon the ground that counsel either failed to notice that these demurrers were filed by other counsel, or upon the ground that counsel were mistaken in the conclusion reached by them that the point was not ripe for decision. While,

under the rule laid down in the above-cited case, we would not grant a motion for a rehearing upon the application of the losing party, still, as said in the first headnote in the same case, the court of its own motion, before the remittitur is transmitted to the court below, will always order a rehearing when it becomes dissatisfied with the ruling made. Counsel were permitted in the present case to file elaborate briefs on the questions involved in the motion for a rehearing. Nothing presented therein has brought about any dissatisfaction in the minds of the court with the ruling as rendered. The motion for a rehearing will be denied.

*All the Justices concur, except Lumpkin, J., disqualified, and Fish, C. J., absent.*