LATIMER *v.* BENNETT, superintendent of banks.

# 812

No. 6295. FEBRUARY 13, 1929.

*W. A. Slaton,* for plaintiff in error.

*Norman & Norman,* contra.

HINES, J. This case is in this court upon the grant of a certiorari to review the decision in *Latimer* v. *Bennett,* 37 *Ga. App.* 246 (139 S. E. 570).

The first assignment of error upon the judgment of the Court of Appeals, affirming the judgment of the court below in the main bill of exceptions, is that that court erred in holding that "Section 8 of the act of 1888 (Ga. L. 1888, p. 73), which fixes the liability of stockholders of the Washington Exchange Bank, has not been repealed or modified by subsequent legislation contained either in the act of 1893 (Civil Code of 1910, § 2270) or in the banking act of 1919 (Ga. L. 1919, p. 135), or otherwise." The assignment of error on this ruling is that the banking act of 1919 is a general law undertaking to completely legislate upon the subject of banks and banking in this State; and expressly provides that said act shall "supersede all existing laws regulating banks and banking in this State." This assignment of error is without merit. It is not contended that section 8 of the act of 1888 is expressly repealed by the banking act of 1919. If that section has been repealed, this has been effected by implication alone. It is a well-recognized principle of our law that repeals by implication are not favored, and that a general later affirmative law does not abrogate an earlier special law by implication. It is also well settled that a general law will not be so construed as to repeal an existing special law, unless

it is plainly manifest from the terms of the general law that such was the intention of the legislature. The repugnancy between the general law and the special law must be manifested by explicit language, or there must be something which shows that the intention of the legislature was to deal with the special act, and that the general one was intended to embrace the special cases within the previous one, or something in the nature of the general law making it unlikely that an exception was intended regarding the special act. *Franklin County* v. *Crow,* 128 *Ga.* 458, 461 (57 S. E. 784). The provision in the repealing clause of the banking act of 1919, that "All laws and parts of laws in conflict with this act are hereby repealed," does not diminish the force of these rules of construction. *Montford* v. *Allen,* 111 *Ga.* 18, 21 (36 S. E. 305); *Franklin County* v. *Crow,* supra. The provision in the banking act of 1919 which declares that it is to "supersede all existing laws regulating banks and banking in this State" cannot be held to indicate an intention on the part of the legislature to modify or repeal an important provision in the charter of a bank previously granted by special act of the legislature. This provision does not manifest in explicit language the intention of the legislature to bring about this result. Besides, the banking act of 1919 clearly indicates the purpose of the legislature to preserve the special charters of banks previously granted by its enactments. By section 1 of article 9 of said act it is provided that any bank incorporated by special act of the General Assembly may have its charter amended so as to incorporate therein any provision of the banking act or any amendment thereto. Ga. L. 1919, pp. 135, 169. By section 2 of said article the method of amendment of the charter of any bank incorporated by special act of the legislature is provided for. It clearly appears from these provisions that it was not intended by the legislature in passing the banking act of 1919 to modify or repeal provisions in the charters of banks previously granted by special acts of the legislature. On the contrary it was the purpose of the legislature in passing this act to leave such charters intact, but to provide for their modification or amendment by the method therein provided. In *Bennett* v. *Wilkes County,* 164 *Ga.* 790 (139 S. E. 566), we virtually held that section 8 of the charter of this bank was not repealed by the banking act of 1919. So it follows that in our opinion this section was not repealed, and

that the ruling of the Court of Appeals on this subject was not erroneous.

■ The second assignment of error on the judgment of the Court of Appeals, affirming the judgment of the lower court in the main bill of exceptions, is that the Court of Appeals erred in holding that section 8 of the charter of this bank "fixes liability upon all the stockholders of the bank, whether they were holders of stock originally issued at the time of the bank's incorporation, or subsequently became owners of stock either by subscription to stock issued by the corporation or by transfer from other stockholders." The contention is that only original subscribers to the stock of this bank are liable to creditors under this section of its charter. This section is as follows: "All the assets of the bank shall be liable for its debts, and each stockholder shall be individually liable for the debts of the corporation to the extent of his or her unpaid subscription, and in addition thereto each stockholder shall be individually liable for the debts of the bank equally and ratably, and not one for another, in an amount equal to the par value of the stock owned by him or her at the time the debt was created." What stockholders, then, are individually liable for the debts of the Washington Exchange Bank? The charter answers this question. Each stockholder shall be individually liable for the debts of the corporation to the extent of his or her unpaid stock subscription. In addition to this liability, each stockholder shall be individually liable for the debts of the bank equally and ratably, not one for another, in an amount equal to the par value of the stock owned by him or her at the time the debt is created. Such stockholder may be either one who subscribed to the stock of the bank, and is a stockholder when a debt is created, or he may be a stockholder who became such by the transfer of stock, and is such at the time a debt is created. Liability under this section is not confined solely to original subscribers to the stock of this bank. It goes further and includes stockholders who were not subscribers but were stockholders at the time any debt of the bank was created. Before the act of 1893 there was no general law of this State fixing the individual liability of stockholders in banks. The liability of the stockholders was in each instance, prior to that act, dependent upon the provisions of the particular charter. The General Assembly had no settled policy with regard to the terms upon which bank charters should be

granted, nor had it any formulated scheme looking to the protecting of creditors of these institutions. *Reid* v. *DeJarnette, 123 Ga.* 787 (51 S. E. 770, 3 Ann. Cas. 1117) ; *Wheatley* v. *Glover, 125 Ga.* 710 (3) (54 S. E. 626) ; *Crawford* v. *Swicord, 147 Ga.* 548, 549 (94 S. E. 1025).

Properly construed, this section of the charter of the Washington Exchange Bank includes two classes of stockholders. The language, "each stockholder shall be individually liable for the debts of the corporation to the extent of his or her unpaid stock subscription," embraces stockholders who became such by subscription to the stock of the bank. Stockholders who became such by subscription to the capital stock of the bank became liable to creditors for any unpaid stock subscription. Any amounts due on subscriptions to the stock of the bank are assets for the payment of its debts. The language, "and in addition thereto, each stockholder shall be individually liable for the debts of the bank equally and ratably, and not one for another, in an amount equal to the par value of the stock owned by him or her, at the time the debt was created," embraces both stockholders who became such by subscription to the stock of the bank, and those who acquired stock in the bank otherwise, provided they were stockholders at the time any debt of the bank was created. Every stockholder who is such when a debt is created is liable, whether he became such by subscription for stock or by transfer thereof. The liability is not restricted to any particular class of stockholders, other than those who are such when debts are created. All such are liable. It is insisted by the petitioner in certiorari that inasmuch as the common-law liability recited in the first clause of the section exists only against subscribers who have an unpaid subscription, it follows that the special statutory liability fixed by the second clause of this section exists only against stockholders who have an unpaid subscription, and that such stockholders can only be those who had subscribed for stock in the bank. This argument was dealt with in *Crawford* v. *Swicord,* supra, and this "highly technical construction" of a similar provision in a bank charter was held untenable. Nothing to the contrary of what we now rule was decided in *Reid* v. *DeJarnette,* supra. In that case the provision of the charter was that "each stockholder of said corporation shall be individually liable for the debts of the corporation to the amount of his unpaid sub-

scription to the capital stock of the corporation, and for an additional amount equal to his subscription." This court properly held that under this language the stockholders referred to were those who had subscribed for stock in the bank, and not those who had become owners of stock by way of succession from the original stockholders. So we are of the opinion that the Court of Appeals did not err in its ruling upon this subject.

■ We come next to deal with the exceptions urged by the plaintiff in certiorari to the judgment of the Court of Appeals reversing the judgment of the lower court on the bill of exceptions filed by the superintendent of banks. We deal with the assignments of error upon this judgment in the order in which they appear in the petition for certiorari. In the first place, petitioner alleges that the Court of Appeals erred in holding that "A stockholder in the Washington Exchange Bank, who had sold her stock prior to the failure of the bank and to its being taken over for liquidation by the superintendent of banks, but who had not had the sale and transfer of the stock entered upon the books of the bank, as provided in section 6 of the act of 1888 incorporating the bank, is liable to an assessment under section 20 of article 7 of the banking act of 1919, in an amount equal to the par value of her stock, for the payment of the indebtedness of the bank existing at the time of its failure." The error assigned upon this holding is that under the charter of this bank petitioner was liable, if at all, only for such debts as were created while she was the owner of stock in this bank, and not for debts created by the bank after she had sold her stock, although the transfer of her stock to her vendee had not been entered upon the books of the bank, and although her stock stood in her name on the books of the bank at the time it became insolvent. We do not think that this contention is sound. As we have seen, the charter of this bank creates an individual liability against its stockholders. It makes stockholders in the bank liable for debts created during the time they were such stockholders. Section 6 of the charter of this bank provides "That the board of directors shall cause to be issued to each stockholder a certificate of stock truly representing his or her interest, and such stock shall be held bound to the bank for any dues or indebtedness by the said stockholder, and said bank shall have a lien upon such stock superior to all other liens, . . . and no stockholder who may be in

any wise indebted to said bank, whether as principal, security, endorser, or otherwise, while so indebted, [shall?] sell, transfer, or dispose of his stock without consent of the board of directors; and such transfer, sale, or disposition, or any transfer, sale, or disposition by a stockholder of his or her stock, in order to be valid, must be made on the books of the corporation by the owner or his duly constituted attorney in fact, and under such rules and regulations as may be prescribed in the by-laws, and any other sale, transfer, or disposition is void as against the company." Ga. L. 1888, pp. 73, 75. The liability of a stockholder in this bank under section 8 of its charter is an asset of the bank, and can be enforced by the bank. Such liability constitutes an indebtedness to the bank. This being so, "any transfer, sale, or disposition by a stockholder of . . her stock, in order to be valid, must be made on the books of the corporation by the owner or" her "duly constituted attorney in fact." This requirement not having been complied with by the stockholder in this case, her liability for the debts of the bank continued, although she had transferred and delivered her shares to another; and upon the insolvency of the bank she became individually liable for the debts of the bank, equally and ratably, "in an amount equal to the par value of the stock owned by . . her at the time the" debts were created.

Independently of the provision of section 6 of the charter of this bank, the stockholder would have been liable, although she had parted with her stock, where it had not been transferred upon the books of the bank before a proceeding had been instituted to enforce the same. In *Wheatley* v. *Glover,* supra, this court made this ruling: "When a charter of a bank provides that 'the individual property of the stockholders at the time of suits shall be liable for the ultimate payment of the debts of the company in proportion to the amount of stock owned by each stockholder,' a stockholder is not liable who has actually parted with his stock and has transferred it upon the books of the bank before any suit is brought against the bank by a creditor." This ruling necessarily means that a stockholder would not be relieved from liability imposed by the charter of a bank, until he has actually parted with his stock and a transfer thereof has been made upon the books of the corporation before any action is taken to enforce such liability. The charter dealt with in the case last cited was created prior to

the passage of the act of 1894, now embraced in the Civil Code (1910), §§ 2247 et seq. In order to escape liability imposed upon a stockholder by the charter of a bank, the stockholder must see that the stock in the bank which he disposes of is transferred upon the books of the company. The general rule is that the books of a corporation furnish evidence as to persons who are entitled to the rights and privileges of stockholders and to whom creditors may look for payment in the event of the insolvency of the corporation. Creditors of the corporation are presumed to have relied upon the books. Accordingly, where a stockholder, who transfers his stock, fails to have the transfer registered on the corporate books, he remains, as a general rule, liable as a stockholder to the creditors of the corporation. This is now the statutory rule in this State. Civil Code (1910), § 2248. The ruling of the Court of Appeals under review would have been too broad if the total indebtedness of the bank were less than its total capital stock. In that event a stockholder would be liable individually for the debts of the bank only equally and ratably, that is, for his proportionate share of the debts. But the facts in the record disclose that the total indebtedness exceeded the total capital stock. In these circumstances the ruling of the Court of Appeals as to the amount due by petitioner is correct. So we are of the opinion that the Court of Appeals did not err in its ruling above set forth, for the reason assigned.

■ In the second place, the petitioner excepts to the following ruling of the Court of Appeals: "While a stockholder so assessed may, by an affidavit of illegality, contest his or her liability for the assessment, the stockholder can not contest the correctness of the estimate made by the superintendent of banks nor the amount of the assessment." The assignment of error is that this decision of the Court of Appeals was based upon a portion of section 20 of article 7 of the banking act of 1919 (Ga. L. 1919, pp. 135, 160), when such portion of said section had been expressly repealed by the act of August 26, 1925. Ga. L. 1925, pp. 119, 130. The exception to this ruling of the Court of Appeals is well taken. That court seems to have overlooked the act of August 26, 1925, which gives to a stockholder the right, by affidavit of illegality, "to contest his liability for such assessment and the amount and necessity thereof." For this reason this ruling of the court was erroneous.

■ On September 24, 1927, a judgment was rendered by the

Court of Appeals, affirming the judgment of the court below on the bill of exceptions filed by petitioner, and a judgment was rendered dismissing the bill of exceptions filed by the superintendent of banks. On October 1, 1927, these judgments were vacated by the Court of Appeals, and on that date separate judgments were rendered, affirming the judgment rendered by the lower court on the bill of exceptions filed by petitioner, and reversing that portion of the judgment to which the superintendent of banks excepted. Petitioner excepts to this latter judgment, and says that the court erred in its rendition, upon the ground that as her bill of exceptions was a main bill of exceptions, and as that filed by the superintendent of banks was a cross-bill of exceptions, the court should, after affirming the judgment on her bill of exceptions, have dismissed the bill of exceptions of the superintendent of banks, and should not have reversed that portion of the judgment of the lower court to which the superintendent excepted. "When the successful party to any cause tried in any of the superior or city courts of this State, which is carried to the Supreme Court by the unsuccessful litigant, files a cross-bill of exceptions, complaining of errors in rulings made upon the trial, adverse to him, it shall be the duty of the Supreme Court [or the Court of Appeals] to hear argument upon such cross-bill of exceptions, and to decide the questions therein made, if a reversal of the judgment of the court below is ordered, or if the effect of the affirmance is to leave the case to be again tried in the court below." Civil Code (1910), § 6139. Whether this portion of the judgment of the Court of Appeals is erroneous or not depends upon the determination of the question whether the bill of exceptions filed by the superintendent of banks was a main or cross-bill of exceptions. It is true that the pleader in drawing the bill of exceptions filed by the superintendent of banks denominates it a cross-bill of exceptions. He likewise reiterates in the instrument that it is a cross-bill of exceptions. It is, however, a familiar principle of the law that the name given to a pleading by the pleader is not conclusive in determining the character of the pleading. This at last must be determined by the facts set out in the pleading, and not by the name given it by the pleader, although the name given to the pleading by the pleader may be looked to in determining its true character. Is this bill of exceptions of the superintendent of banks a cross-bill? In it the super-

intendent of banks excepts to and assigns error upon that portion of the final judgment of the court below in which the trial judge held that petitioner was not liable for any debts of the bank created after she had sold her stock in this bank, although such stock had never been transferred to the party to whom she sold the same upon the books of the bank, but stood in her name thereon until the bank became insolvent and was taken over by the superintendent of banks. He sets out in his bill of exceptions the agreed statement of facts on which this judgment was rendered. He sets out the portion of the final decree to which he excepts. He then sets out fully the assignment of error on the portion of the final judgment to which he excepts. The only exception and assignment of error is to that portion of the final decree which was adverse to the superintendent of banks. If the decision had been rendered as contended for by the superintendent, it would have been a final disposition of the case, and, under the express terms of our statute, exceptions could have been taken thereto by means of an independent bill. Civil Code (1910), § 6138. While the bill of exceptions is denominated by the plaintiff in error as a "cross-bill," as it assigns error upon a judgment which is a subject-matter for an independent or main bill of exceptions, it will be treated as a main bill of exceptions, and not as a cross-bill of exceptions. *Sumner* v. *Sumner,* 121 *Ga.* 1, 4 (48 S. E. 727). So we are of the opinion that the Court of Appeals did not err in not dismissing the bill of exceptions filed by the superintendent of banks, for the reason assigned by petitioner.

■ We affirm all the rulings of the Court of Appeals, except as in the fourth division of this opinion. That ruling is reversed.

*Judgment affirmed in part and reversed in part. All the Justices concur.*