No. 58.—JOHN W. BROOKS and others, plaintiffs in error, *vs.* CHARLES ROONEY and another defendants in error.

[1.] If the principal Sheriff executes a deed in conformity with a sale, made by one who claims to act as deputy, this is a recognition of the deputy's authority and a ratification of his act, and is sufficient to protect the purchaser's title, had the deputy acted without any regular appointment.

[2.] The acts of a deputy, *de facto*, are good as to *third persons.*

[3.] Tax Collectors' sales and all others made under summary proceedings and special powers, and by order of Courts of limited jurisdiction, must shew upon their face that the pre-requisites of the law have been strictly pursued. It is otherwise of sales made by Sheriffs under the judgment and execution process of Courts of general jurisdiction.

[4.] To the purchaser who pays his money and receives the Sheriff's deed, it is a matter of no consequence whether the return of the execution be imperfect or not made at all; the irregularity or omission cannot affect the validity of his title.

[5.] The purchaser at Sheriff's sale, depends upon the "judgment, the levy and the deed; all other questions are between parties to the judgment and the officer." It is sufficient for the purchaser that the Sheriff had competent authority, and sold and executed to him a title. The title of a purchaser at Sheriff's sale is not created by, nor dependent on, the return, but is derived from the previous sale made by the Sheriff, by virtue of his writ.

| 11 | 423 |
| 100 | 554 |
| 11 | 423 |
| f109 | 644 |

| 11 | 423 |
| 115 | 621 |
| 11 | 423 |
| f116 | 274 |
| 116 | 731 |

| 11 | 423 |
| 117 | 503 |

[6.] The Acts which make it the duty of the Sheriff to advertise the sale of property in a particular way, and to sell between certain hours of the day, are merely directory to the officer. His neglect to observe these directions may subject him to a suit for damages, at the instance of the party injured by the neglect; but it will not affect the title of the purchaser, unless there be collusion between him and the Sheriff.

[7.] A purchaser at Sheriff's sale has a right to presume that a public officer, known to possess the power to sell, has taken every previous step required of him by the law, under which he sells.

[8.] Where a judgment has been obtained, and an execution has issued in the *lifetime* of the defendant, his subsequent death will not arrest the collection of the debt by levy and sale of the intestate's property, notwithstanding his heirs at law are *minors* and no administration has been granted upon the estate.

Ejectment, in Muscogee Superior Court.    Tried before Judge POWERS, at November Term, 1852.

The heirs at law of Martin Brooks, deceased, brought suit for a lot of land in Muscogee County.   The defendants claimed under a Sheriff's sale of the land, as the property of Martin Brooks.

The defendants on the trial offered in evidence a deed made by John C. Mangham, as Sheriff, reciting that by virtue of a *fi. fa.* issued from the Inferior Court of said County, (of Muscogee) at the suit of James C. Leonard against Martin Brooks, he had lately seized, (this tract of land,) and after being advertised according to law, he did, on the sixth day of June, in the year of our Lord 1843, at the place of public sales in the said County of Muscogee, expose the same at public outcry, when Kenneth McKeagie, &c."

Also, a *fi. fa.* from the Inferior Court of said County, in favor of James C. Leonard against Martin Brooks, upon which there was entered a levy on this tract of land, signed by "Theobald Howard, D. Sheriff." Also, a return of the sale and the disposition of the proceeds, which was signed by no person.

Plaintiffs' counsel objected to the admission of the deed in evidence because it was made by John C. Mangham, and the levy was made by Theobald Howard, D. Sheriff, and there was no

evidence that he was, or acted as Deputy Sheriff. *Also*, because it did not appear in said deed, nor was there any evidence that the said sale was advertised at the Court house door and two or more public places, and was made between the hours of ten o'clock, A. M. and four o'clock, P. M. as required by law.

All of which objections, the Court overruled, and plaintiffs' counsel excepted.

Plaintiffs' counsel also objected to the *fi. fa.* going in evidence, on the ground that it did not appear, nor was there any proof that the lot in dispute was sold, as there was no date or signature to the entry making a return of the sale. All which objections the Court overruled, and this decision was excepted to by counsel for plaintiffs.

Plaintiffs' counsel requested the Court to charge the Jury, that if they believed from the evidence, that at the time of the levy and sale, Martin Brooks, the defendant in *fi. fa.* was dead, and there was no representation upon his estate, and the heirs were all minors, the sale was void.

The Court refused so to charge, and plaintiffs excepted.

On these exceptions error is assigned.

W. Dougherty, for plaintiffs in error.

Wiley Williams, for defendants.

*By the Court.*—Lumpkin, J. delivering the opinion.

This was an action of ejectment, brought by the heirs at law of Martin Brooks, deceased, to recover lot No. 134, in the City of Columbus. The plaintiffs proved on the trial, that they were the children and only heirs of the decedent, who died in possession of the premises in dispute, and who had lived thereon for several years previous to his death; that the rent of the lot was worth $100 per annum, and that the defendants were in possession at the time the suit was instituted.

[1.] The testimony being closed on the part of the plaintiffs, the defendants offered in evidence a deed from the Sheriff of

Muscogee County, for the property, together with the original *fi. fa.* and entries thereon, under which it was sold. The deed was objected to, on the ground that it was made by John C. Mangham, as Sheriff, when the levy on the execution was endorsed by Theobald Howard, as Deputy Sheriff; and there was no proof to show that Howard, who made the levy, was the deputy of Mangham, who conveyed the title. It was farther objected to the deed, that it did not appear from its recitals, nor was it established by *aliunde* proof, that the sale of the lot was advertised at the Court house door, and two or more public places in the County ; and that the sale was made between 10 o'clock, A. M. and 4 o'clock, P. M. as the Statute requires.

The execution was objected to for the reason, that it did not appear from the entry thereon, nor was there any other legal proof of that fact, that the lot in controversy had been sold at all, as there was no date nor signature by the officer to the entry of sale on the *fi. fa.* The defendants' counsel, to obviate this alleged omission, proved that the endorsement of sale, as well as the distribution of the proceeds, was in the handwriting of Theobald Howard, the Deputy Sheriff. The Court admitted the testimony, and to this decision counsel for the plaintiffs excepted.

[1.] The return of the levy and sale of this land is made by Theobald Howard, as Deputy Sheriff. The deed is made by John C. Mangham, as Sheriff. This is a recognition of the Deputy's authority, and a ratification of his act. And this would have been sufficient to protect the purchaser, had Howard acted without any regular appointment.

[2.] The acts of a deputy *de facto*, are good as to third persons. 1 *Hawks.* 329. 10 *N. H. Rep.* 167. 4 *Ala. R.* 527. 5 *Ibid*, 295. 9 *Mass. R.* 231. 10 *Ibid*, 290. 15 *Ibid*, 180. 5 *Pick. R.* 487. 5 *Smed. & Marsh.* 573.

[3.] The next complaint is, that it does not appear, either by the recitals in the deed itself, or by extrinsic proof, that the land was advertised and sold according to law.

The deed recites that John C. Mangham, the Sheriff, seized the lot as the property of Martin Brooks, and after being advertised according to law, that he did, on the 4th day of June,

1843, at the place of public sales in said County expose the same at public outcry.

The case of *Clements against Henderson,* (4 *Ga. R.* 148,) is relied on as authority for the plaintiff in error. That was an *administrator's* deed, and the two cases are consequently clearly distinguishable. In cases of sale under special power, as that of a Tax Collector, and by order of Courts of limited jurisdiction, as Courts of Ordinary, the execution of the power must show upon its face, that the Statute has been strictly complied with. But it is otherwise with sales made by Sheriffs under judgments of Courts of general jurisdiction. *Munic vs. The President and Selectmen of Natchez,* 4 *Smedes & Marshall,* 602.

[4.] This reasoning applies to the third exception, namely: that it did not appear from the entry itself on the *fi. fa.* nor was there any proof that the lot in litigation was sold, as there was no date nor signature to the entry on the *fi. fa.* It was shown that the endorsement of the sale and of the distribution of the proceeds, was in the handwriting of Theobald Howard, who made the sale.

But independently of this, the errors of omission or of commission on the part of the Sheriff, especially after the sale is made, and over which the purchaser has no control, cannot affect the validity of his title. Whether the return of the execution be imperfect or not made at all, is a matter of no consequence to the purchaser, who pays his money and receives the Sheriff's deed. 7 *Black. R.* 154. 1 *Johns. Cases,* 153. 3 *Yerger,* 179. In *Sullivan & Price vs. Hearndon,* (10 *Ga. R.* 294,) this Court expressed the opinion, that if the Sheriff has authority to sell property, a failure in the performance of any part of his duty, and for which he would be compelled to indemnify the party aggrieved, to the extent of the injury received, would not destroy the title of an innocent purchaser.

[5.] And the conclusion to be derived from a full review of all the adjudged cases, is that which is briefly announced by the Supreme Court of the United States, in *Wheaton vs. Sexton,* (4 *Wheat. R.* 503,) namely: that " the *purchaser* depends upon the judgment, the levy and the deed," and that " all other questions

are between the parties to the judgment and the officer." See also, 3 *Wash. C. C. R.* 546. 4 *Rand.* 427. 4 *Wend.* 462. 2 *Bibb,* 401. 3 *J. J. Marshall,* 439. 1 *Nott & McCord,* 11. *Dem ex Dem. Osborne vs. Woodson Hay, N. C. R.* 24. 1 *Murph. Law and Equity R.* 311.

[6.] In this last case cited, the Supreme Court of North Carolina held, that the Statutes of that State, which made it the duty of the Sheriff to advertise the sale in some newspaper printed in the State, and at three public places in the County, and set forth the names of the owners of the lands, the watercourses on which the lands are situated, &c. are merely directory to the Sheriff in the discharge of his duty ; that his neglect to observe these directions may subject him to a suit for damages at the instance of the party injured by the neglect; but it will not affect the title of the purchaser, unless there be collusion between him and the Sheriff; and in delivering its opinion, the Court very properly suggests, that a contrary doctrine would so embarrass sales of this kind, and throw so many difficulties in the way of persons willing to bid a fair price for the property, that they would not be willing to purchase. For it would not only be necessary to prove these facts on any particular occasion, but they must preserve the evidences of them with their titles, to be used at any distant period whenever these titles might be made the subject of controversy. The consequences would be, that property would become a subject of speculation merely by those who would, by purchasing at very reduced prices, only be willing to encounter the inconveniences and risks of purchasing under these embarrassing circumstances.

[7.] We believe this to be sound doctrine, and that although the failure in the performance of any part of the Sheriff's duty, might subject him to an action, in which he would be compelled to indemnify the owner of the land which might be irregularly sold, or the creditor to the extent of the injury received by such sale, yet it would not destroy the title of the purchaser, who has a right to presume that a public officer, known to possess the power sell, has taken every previous step required of him by the law under which he sells.

I am aware that authorities may be found which seem to be in conflict with this doctrine ; and which hold that the return of the officer is a necessary part of the title, and must show a strict compliance with the requirements of the Statute ; and that the return must set out all the facts, in order that the Court may judge whether the sale is legal and according to the course of the Statute. But it will be found on examination, that these decisions were made on some peculiar provision in the local Act, under which the sale took place, or without reference to the principle to which we have already adverted, to wit: the distinction between sales made under summary proceedings, or the authority of Courts of limited jurisdiction, where the facts which give jurisdiction ought to appear, in order to show that its proceedings are *coram judice,* and sales under judgments of Courts of general jurisdiction. No presumption arises in favor of the exercise of power by a Court of special jurisdiction. The rule is universal that the record must show every thing necessary to give jurisdiction, much less does any presumption arise in favor of the legality of the acts of a Tax Collector or other officer, who executes summarily, limited power, expressly delegated. He must show, or the purchaser must, who claims through him, that the contingency has happened, the condition been performed, which are necessary to give validity to his acts. But not so with the Sheriff, who derives his power to sell from the process of a Court of general jurisdiction. In the former case, the acts of the agent are, *prima facie, void.* In the latter, they are, *prima facie, valid*—indeed, for certain purposes, conclusively so.

[8.] The last exception is, that Martin Brooks, the defendant in execution, died after the judgment and after the *fi. fa.* had issued, but before the levy, and that the heirs at law were *minors* at the time, and that there was no representative upon his estate.

It is conceded, that at *Common Law* the *fi. fa.* could proceed, notwithstanding the death of the defendant. But it is concluded, that by the Statutes of this State, a defendant, after execu-

tion has issued, has the right by affidavit of illegality, to arrest the progress of the *fi. fa.* for any irregularity ; to point out what portion of his property shall be seized by the officer, in satisfaction of the debt ; to sue for and recover the difference between the price bid at the first and second sales, in case of non-compliance by the purchaser with the terms ; that he is entitled to notice of the levy, if it be on land, as in the present case ; and to appear in Court and superintend personally, the proper appropriation of the money arising from the sales. That inasmuch, therefore, as there is something which the defendant may do to protect his interest, that either the defendant himself, must be in life, or legally represented, provided he is dead, before the process can be enforced.

But is there nothing which may be done in *England,* after the execution has issued, to arrest its progress ? What was the object of the writ of *audita querela,* but to be relieved from a judgment or *execution,* for some injustice of the party who obtained it ? It is true, that the summary remedy by *motion,* has superseded mainly this ancient process. Still the change as to the mode of relief, does not weaken the force of the reply, that at Common Law, no less than by the Statutes of this State, the defendant in execution has the right to be relieved from the wrongful acts of the opposite party.

It is manifest, then, that it will not do to rest this proposition upon the ground occupied by counsel. To change the Common Law in this respect, we are clear, would require the interposition of the Legislature. It can only be done by Statute. The argument to be deduced from the Statutes already of force, and to the provisions of which I have adverted, constitutes, in our opinion, no such case of repeal by necessary implication, as would authorize this Court to make the change.

And while it is conceded that this is not precisely the question adjudicated in *Ingram vs. Hurt,* (10 *Ga. R.* 568,) yet this case is fully embraced in the reasoning of the Court in that case ; and it only remains to repeat here, the intimation thrown out there, that is, that the Court of Equity is always open for the

assistance and protection of *minor heirs* or adults, priority credit-ors, or any others who are likely to be injured by the enforce-ment of the execution, for the want of an administration.

Let the judgment be affirmed.