ROBERT E. CUNNINGHAM, plaintiff in error, vs. JOHN SCHLEY and ROBERT SCHLEY, Executors of George Schley, deceased, defendants in error.

S., as guardian of C., made a return to the Ordinary, in which he described certain property purchased by him, as belonging to his ward.  S. died on the 14th of February, 1866, leaving J. and R. his executors.  On the 4th of April, 1866, C., the ward, being of age, petitioned the Ordinary to compel the executors to turn over to him said property in kind.  The ordinary refused the application:  *Held*, The ordinary did right; that neither the Ordinary nor a Court of Chancery, within the twelve months after the qualification of the executors, in the absence of circumstances requiring extraordinary remedies, such as threatened waste, insolvency, etc., will thus summarily deprive the executors of the property left in the possession of testator at his death, upon an application for a mere partial adjustment of the affairs between the ward and his guardian's estate.

Petition and Rule *Nisi*. In Richmond Superior Court, on appeal from the Court of Ordinary. Decision by Judge Wm. M. Reese. April Term, 1866.

George Schley died in February 1866, being at the time testamentary guardian of several of the children of Charles Cunningham, deceased, among them the plaintiff in error; and leaving the defendants in error executors of his last will and testament.

By a return which he made to the Court of Ordinary in the previous year, he admitted that he had in hand, as guardian for the plaintiff in error, certain cotton, bank stock, a promissory note, and some bonds and treasury notes of the Confederate States; having, as it would seem from this return, set apart from the general estate of his wards, this property as the separate share of the plaintiff.

By another paper, made out in the form of a return, and sworn to by him shortly before his death, but not filed, he set forth the same property as still on hand; giving himself credit on the opposite side of the account for an amount of money advanced by him, most of it to defray expenses incurred on the cotton.

In March, 1866, the plaintiff in error, having attained his majority, presented to the Court of Ordinary his petition, praying that the executors of the guardian might be compelled to deliver up to him the cotton, bank-stock, and promissory note above mentioned. The Court granted a rule *nisi* calling on the executors to show cause why they should not do so. They answered the rule; and issue being joined on their answer, the case was appealed, by consent, to the Superior Court. When it came up for hearing in the latter Court, the parties agreed to dispense with a jury, and that the decision of the presiding Judge, on matters of fact, should have the same effect as the finding of a jury. The petitioner offered to waive his demand, as to so much of the property as

might be necessary to satisfy the guardian's estate for the advances made by him ; and he tendered a sum sufficient to pay such advances, announcing himself ready to pay the same in cash, if the Court would order all the property embraced in the petition, to be delivered up.

The executors set up no claim for money in favor of the guardian, except for the advances mentioned ; but they made numerous points in their answer as to the want of jurisdiction in the Court of Ordinary, the irregularity of the remedy adopted by the petitioner, their non-liability to account partially, or to account at all, so early after their qualification, etc.; some of which were sustained by the decision of the Court.

The Court ordered the application to be dismissed, deciding, " that there was no warrant in that Court to exercise a power like this now prayed for; that the executors had not the right to withhold the property,—no right to it at all, and if they took possession of it, they took it in their own wrong, for they had no right to meddle with it; that it was true that the Court of Ordinary was a Court of original equitable and general jurisdiction over testate and intestate estates, but no authority was given to it to direct a partial settlement like this; that the various enactments of the Legislature showed that special legislation was needed to give the Court of Ordinary similar power in other cases, to that which is claimed for it in this. But even if the Court of Ordinary had the power, it would not be proper that it should be exercised in a case like this, where a final settlement is not asked for; that the division made between the heirs (wards) is not binding on them ; and that it is, perhaps, not expedient that the property should be delivered to one of the heirs, (wards) as it may have to be accounted for hereafter.

The petitioner excepted, alleging that the Court erred :

1. In holding that the Court of Ordinary had not the authority or power to grant the prayer of the petioner.

2. In holding that if the Court possesed such power, it was

not expedient or proper that it should exercise it in a case like this.

3. In dismissing the application.

STARNES & JOHNSON, for plaintiff in error.

DOUGHERTY, for defendant.

WALKER, J.

After the expiration of one year from the grant of administration, any distributee may cite an administrator to appear before the Ordinary, who is authorized "to settle finally" between the parties. *Code, secs.* 2556–7; *see, also, secs.* 1790 *to* 1792, "final settlement" alone is provided for. By section 2542 the Ordinary may order the distribution of the estate in kind; but we apprehend this could not take place in less than twelve months, for "the administrator shall be allowed twelve months, from the date of his qualification, to ascertain the condition of the estate." *Sec.* 2493. "No suit to recover a debt due by the decedent shall be commenced against the administrator until the expiration of twelve months from his qualification." *Code* 2507. These are all the provisions we find authorizing the Ordinary to make a settlement of the affairs of the estate; and, we think, all taken together, show clearly that no proceedings can be sustained against the administrator for a settlement, either final or partial, within the twelve months.

But it is contended that this is not an application for a settlement, either partial or final—it is not a proceeding at the instance of an heir or legatee, but of a ward of the testator, to have delivered to him, in specie, property which the testator had set apart as the property of this ward, and, therefore, the statutes referred to are inapplicable to the case.

Then, we enquire, where is the authority under our laws, for the Ordinary, in this summary manner, to take out of the posseesion of the executors this property and turn it over

to petitioner? We know of none. The statutes are silent on the subject. It was argued that a Court of equity, under the facts of this case, would grant the relief here prayed, and that the Ordinary has the same power. Without intending to decide this question, we have considered the facts, as though we were in a Court of equity; and still we think the application properly refused. We know of no instance where a Court of equity, in less than twelve months from the qualification of the executor, will seize property and turn it over to another, without making a complete and final settlement between the parties in relation to the subject matter: equity does complete justice. We think, then, that neither the Ordinary nor a Court of equity is authorized, at this time, to seize this property, and turn it over in specie to the applicant; and especially so, in the absence of all circumstances requiring extraordinary relief, such as threatened waste, insolvency, etc. We, therefore, affirm the judgment of the Court below.

Judgment affirmed.