## LITTLE *v.* WEST, guardian, *et al.*

1. Where a guardian encroached upon the corpus of his ward's estate for the purpose of improving the property, and subsequently was granted letters of dismission, and thereafter his ward, who had become of age, filed a petition attacking the judgment of dismissal as being obtained by fraud, and seeking to have an accounting, and on the trial the bona fides or mala fides of the guardian in making expenditures for improvements and repairs and in subsequently making a sale of the property were involved, there was no error in permitting him to testify that he made the improvements after consultation with the ordinary in regard to it. A conference with the ordinary, and even the oral approval of the ordinary to the making of such expenditures, would not grant legal authority for that purpose. The testimony just mentioned was admissible only in so far as it bore upon the bona fides or mala fides of the defendant; but in view of the nature of the issues involved, the admission of such evidence for that purpose was not erroneous.

2. Even if there were any merit in the assignment of error based upon the refusal of the court to give certain charges as requested, the assignments are not well taken, in that they fail to show that the requests were in writing, or when they were preferred.

3. On the trial of a suit brought by a ward, after attaining majority, against her guardian, to revoke an order of the court of ordinary discharging the guardian, on the ground of fraud in its procurement, and for an accounting, etc., where in the pleadings and on the trial an order for sale and the sale thereunder of real estate belonging to the ward were attacked as fraudulent, it was error for the court to instruct the jury: "If that is not true, if this petition for the sale was for the support, maintenance, and education, or either one of them, of this plaintiff, or if she requested her guardian to apply to have this property sold for that purpose, why, she could not recover, and the sale would be valid."

(*a*) Primarily the income, and not the corpus, of a ward's property is to be resorted to for the purpose of education, maintenance, and making necessary repairs on the ward's property.

(*b*) The ordinary may, in his discretion, allow the corpus of a ward's estate, in whole or in part, to be used for the education and maintenance of the ward.

(*c*) But a guardian is not authorized to sell or encumber the property of his ward for the purpose of erecting permanent improvements on it; or, if he erects permanent improvements on it with his own money, he can not obtain a legal order of the ordinary, or court of ordinary, to sell it to reimburse himself.

August 15, 1916.

Equitable petition. Before Judge Bell. Fulton superior court. January 23, 1915.

Pearl Little, formerly Pearl Ostrander, brought suit against J. J. West, guardian of Pearl Ostrander, and alleged in substance

as follows: She is the sole heir at law of Josie Ostrander, deceased. The latter died about 1903 or 1904, leaving an estate in Fulton county, Georgia, consisting of personal property and part of land lot No. 43 of the 14th district, located on South avenue, Atlanta. On November 2, 1904, J. J. West was appointed administrator on the estate of Josie Ostrander, and on November 22, 1909, filed in the court of ordinary of Fulton county his final return, showing that on that day he delivered to J. J. West as guardian of Pearl Ostrander, now Pearl Little, the sole heir at law of Josie Ostrander, the above real estate, together with $79 in cash. J. J. West was appointed guardian of petitioner at the February term, 1909, and acted as such until September 2, 1912, when he was granted a discharge. West, as guardian, applied for leave to sell the above real estate, and was granted authority to sell on March 3, 1912. The guardian did pretend to sell the real estate on the first Tuesday in April, 1912 (April 2, 1912), and the purchaser at the purported sale was S. J. West, son of J. J. West, and surety on the bond of J. J. West, guardian, for the sum of $850. The alleged sale was fraudulent and was carried out in fraud. J. J. West, as guardian, represented that it was necessary that the sale take place for the purpose of maintaining petitioner, which she alleges was untrue, and he knew that it was untrue. He knew that petitioner would in a few weeks become of age, and he hastened the sale of the property in order that his son could buy in same and resell for a much larger sum. The property was bid in by S. J. West, son of J. J. West and surety on his bond as guardian, when in fact the purported sale was simply a scheme between J. J. West and S. J. West, whereby they could sell the property, buy it in, and resell it for a profit, thereby defrauding and cheating petitioner out of the real value of the property. The property brought only $850 at the sale, when it was worth at least $1500 to $1700. Petitioner had no notice and was not advised that the sale would take place, and she did not know that the sale had occurred until some time in June, 1912, when she received notice from the First National Bank of Butte, Montana, that it had a check from J. J. West which it would deliver to her upon the execution of a certain receipt in full of all demands against J. J. West as guardian, etc., and of all her interest in and to the property belonging to her as sole heir of Josie Ostrander. She re-

fused to accept the check or to sign the receipt, and has not received the check nor signed the receipt, for the reason that she is entitled to more than the sum admitted to be due her by J. J. West as guardian, namely, the sum of $239.28. J. J. West as guardian has attempted to file returns which are not true, and to charge her with the sum of $734.25, and other sums to which he is not entitled, and for the expenditure of which he had no authority; nor did he receive any authority of any court for expending said sums, or to charge such sums against your petitioner and against the estate of Josie Ostrander. On April 6, 1912, two days after the alleged fraudulent sale to S. J. West, J. J. West sold the property to Mrs. Anna Walker Jenkins for the sum of $1700. While this sale purports to have been by S. J. West to Mrs. Jenkins, petitioner charges on information and belief that it was not a sale by S. J. West, but that it was a sale by J. J. West, acting fraudulently with S. J. West, and for the purpose of defrauding petitioner. She became of age on May 29, 1912, less than two months after the fraudulent sale took place. J. J. West as guardian knew she would soon be of age, and hastened the sale in order that he might take advantage of her and sell the property at a low price, and resell for his own profit. Under the foregoing facts J. J. West has fraudulently and illegally obtained his discharge as guardian, and he is guilty of a fraudulent and illegal sale of the property of petitioner; and if it had not been for the alleged fraudulent acts, no discharge could have been applied for and obtained. Petitioner prays that the order discharging the guardian be revoked; that he be required to give a strict accounting of his acts and doings in the premises; that he account to her for the real value of the property, $1700; that she have a judgment against him as guardian, as principal, and against S. J. West as security, for the principal sum of $1700, with interest, etc.

S. J. West filed his answer admitting that J. J. West did sell the property described for a cash consideration of $850, but denying that it was worth more than that, or that the sale was fraudulent. He alleged it was legally carried out, and that the property was sold for $1700 on the instalment plan; and he denied that this sale was fraudulent. The land was legally exposed to sale, and after several bids was knocked off to the defendant.

J. J. West answered as follows: He did sell the property re-

ferred to on the first Tuesday in April, 1912, and the purchaser was S. J. West, his son. The money against which the check was drawn was caused by the ordinary to be deposited in a solvent bank; and letters dismissory were granted to the defendant by the ordinary. S. J. West did sell the property for $1700, but the sale was made upon easy payments. Defendant denies that there was any fraud in connection with the sale, whereby a fraud was practiced on petitioner or on the court. The real estate referred to was purchased in 1902 by William Fagan, the plaintiff's father, for the sum of $200, and when defendant took possession of it as guardian there was upon it a small two-room house in a dilapidated condition, and the defendant was unable to rent the house except for a small part of the time and then only for ———— a month. In order to make the real estate produce enough income to pay taxes and assessments for street improvements, it was necessary that the house be put in first-class condition and enlarged. He made application to the court of ordinary in writing, setting forth his full discharge of his trust as guardian; the ordinary made an examination of the defendant's accounts and vouchers, and verified the truth of the petition; the application was published once a week for four weeks in the public gazette where the legal notices of the ordinary's office are usually published; proof was made to the ordinary that the ward was of age; and thereupon letters of dismission were granted by the ordinary to the defendant. At the time of his application for discharge he had in his hands the sum of $239.28, which he deposited with the ordinary, and he caused the same to be deposited in some solvent bank. The sale of the real estate was made after obtaining leave of the court of ordinary, and was before the court-house door, in compliance with the laws of this State regulating such sales. He employed an auctioneer to expose the property for sale, and the price it brought was as much as it was reasonably worth for cash. It was necessary to sell the land in order to pay the expenses incurred by the defendant for taxes, street improvements, and repairs and additions to the house. He made no allowance in his returns for commissions which he was legally entitled to as guardian, nor did he make any allowance for counsel fees incurred by him as guardian. In the event of a revocation of the order discharging him as guardian, he prays that he be allowed to recover the usual commisions and counsel fees.

The jury returned a verdict for the defendants. The plaintiff made a motion for a new trial, which was overruled, and she excepted.

*George B. Rush,* for plaintiff.

*Bryan, Jordan & Middlebrooks,* for defendants.

HILL, J. (After stating the foregoing facts.)

1-2. Headnotes 1 and 2 require no elaboration.

3. Exception is taken to the following charge of the court: "If that is not true, if this petition for the sale was for the support, maintenance, and education, or either one of them, of this plaintiff, or if she requested her guardian to apply to have this property sold for that purpose, why, she could not recover, and the sale would be valid." It is contended that this excerpt is error, for the reason that a request by the ward for her guardian to sell real estate for her support, maintenance, and education would not justify such sale, unless it was in fact necessary for that purpose. There is nothing that might relieve from error this alternative charge that the plaintiff could not recover, and the sale would be valid, if it was for her support, maintenance, and education, "or if she requested her guardian to apply to have this property sold for that purpose." Outside of the presumption arising in favor of the ordinary's order, that the necessary things had been shown to authorize it, the defendant introduced no evidence showing the necessity for the sale; and it rests on the letter written by her in 1908 (which was before his appointment as guardian), in which there was some mention of the need of certain funds, and that she needed a sum of money he had on hand as administrator of her mother's estate. She also stated in her evidence that she had been trying to get him to sell for several years, as she did not expect to live in Atlanta again, but did not refer to any special need. This was the only evidence on the subject; and with this evidence alone before the jury, the alternative charge that if there was a real necessity, or she represented there was a necessity for the sale for the purpose of support, etc., is reversible error. That is not a correct statement of the law, because the mere fact that a minor represents to his guardian that it is necessary to have money for clothes, etc., will not per se make it a necessity. It might operate on the question of good faith; or if she represented there were such necessities, and he acted on these representations in good

faith, they might estop her from denying that the necessities in fact existed. But the charge to the effect that if she simply requested the guardian to make a sale for the purposes of supplying necessities, the sale would be valid, is not a sound statement of the law, and this charge may have caused grave injury.

Primarily the income, and not the corpus, of the property is to be resorted to for the purpose of making repairs, or meeting necessary expenses of the property. Possibly the public burdens, such as taxes or street improvements, and the like, might authorize a sale for their payment, though generally this is coupled with the reinvestment of the surplus, where the application is made to the judge of the superior court. Nor is the question now involved as to whether, if a guardian bona fide expend his own money in betterments which permanently improve the property and increase its rental value, this might furnish an equitable right of reimbursement from rents. Relatively to the corpus of the property, a guardian is not authorized to sell or encumber it for the purpose of erecting permanent improvements on it, or, if he erects permanent improvements on it with his own money, to obtain an order of the ordinary to sell it to reimburse him. The purposes for which an ordinary may order an encroachment on the corpus of a minor's property are stated in the Civil Code, §§ 3060, 3064-3066, and these do not include a desire on the part of the guardian to build additional houses, or to make permanent improvements or betterments. It is contended that what the ordinary might originally allow he might subsequently ratify or confirm, by confirming the returns of the guardian made to him. There are two defects in this suggestion. The first is, that the record in this case does not show any approval of the annual returns of the guardian, except such as may have arisen impliedly from the grant of letters dismissory; and, in the second place, what the ordinary could not originally allow he could not make good by subsequent approval of unauthorized conduct. Of course, the judgment of dismissal of the guardian in this case is a final judgment, and includes anything back of it, unless it can be opened for fraud in its procurement. The judgment granting letters dismissory to the guardian is a bar to any contention as to an accounting back of it, unless it is opened; but if it is opened so that an accounting can take place, then the question of what items are proper to be allowed arises.

The present case furnishes an apt illustration of the impropriety of allowing a guardian to charge the corpus of the estate except for the purposes permitted by the statute. He has charged the ward's estate with $734.25, exclusive of certain interest charged by him, which he alleges was due to a firm of which he was a member, for making improvements on the lot belonging to his ward, which was subsequently sold for $850. Thus an $850 lot, taking its value to be what it brought at the sale, has been encumbered with a debt for $734.25 for its improvement, leaving only the difference (not taking into account the charges made by the guardian for interest) for the owner of the land with the improvement on it.

The charge of the court, in some respects, was not in accord with what has been said above. There were numerous other grounds of exceptions to charges and refusals to charge, not included in the above discussion. Whether the rulings of the court in all respects were accurate or not as to the matters not dealt with, they do not present reversible error for any of the reasons assigned in the grounds of the motion for a new trial.

*Judgment reversed. All the Justices concur.*