19513.   ALMOND, executor, *v.* MOBLEY, superintendent, etc.

DECIDED AUGUST 24, 1929.

*Raymonde Stapleton, W. A. Slaton,* for plaintiff in error.
*Tutt & Brown,* contra.

BELL, J. On the 7th day of April, 1927, A. B. Mobley, superintendent of banks, by W. J. Davis, general agent, issued an execution against Mrs. S. A. E. Almond, for the purpose of enforcing her alleged liability as a stockholder of Elberton Loan & Savings Bank then in possession of the superintendent of banks for the purpose of liquidation under the banking act of 1919. The execution was placed in the hands of the sheriff, who, on December 7, 1927, levied the same on certain lands "as the property of Mrs. S. A. E. Almond, deceased, now in the hands of G. L. A. Almond, as executor of the last will and testament of Mrs. S. A. E. Almond, deceased." The executor filed an affidavit of illegality upon several grounds. The case as thus made was submitted to the judge of the superior court, without a jury, on an agreed statement of facts, and, his judgment being in favor of the plaintiff in fi. fa., the executor excepted.

■ Elberton Loan & Savings bank was chartered by a special act of the General Assembly approved December 24, 1886 (Ga. L. 1886, p. 75). Section 7 of the act of incorporation provided that "each stockholder shall be individually liable to the creditors of said company in an amount equal to the capital stock subscribed or held by him, or her at the time the debt sought to be collected may have been created." One of the grounds of the affidavit of illegality was that, since the liability of stockholders as thus established was for the benefit of all creditors, and not merely for depositors, such liability could not be enforced by execution by the superintendent of banks under the provisions of the banking act of 1919. Ga. L. 1919, p. 160, art. 7, § 20.

Creditors include depositors (*McGregor* v. *Battle,* 128 *Ga.* 577, 58 S. E. 28, 13 L. R. A. (N. S.) 185), and we think the liability, so far as it related to that class of creditors, was subject to be enforced by the statutory method. The defendant pleaded no facts to show that the execution was issued to enforce a liability to creditors other than depositors, but relied merely upon a construction of the charter. In this state of the record, it is unnecessary to decide whether the remedy of execution would be available as to the liability to creditors other than depositors. See, in this connection, *Bennett* v. *Wilkes County,* 164 *Ga.* 790 (3) (139 S. E. 566). If the execution may proceed only for the benefit of depositors, the presumption is that it is proceeding lawfully, and, hence, for that purpose alone, where nothing to the contrary appears. *Connolly* v. *Atlantic Contracting Co.,* 120 *Ga.* 213 (2) (47 S. E. 575); *Loudermilk* v. *Stephens,* 126 *Ga.* 782 (55 S. E. 956); *Ponder* v. *Shumans,* 80 *Ga.* 505 (3) (5 S. E. 502); *Scott* v. *McDaniel,* 64 *Ga.* 780 (3).

■ Mrs. Almond was not a subscriber, but obtained her stock by purchase from other shareholders. The point is made that under the terms of the charter none except those who acquired their stock by subscription or by purchase directly from the bank were subject to the liability. It is insisted that under the applicable rule of strict construction (*Wheatley* v. *Glover,* 125 *Ga.* 710 (5), 54 S. E. 626), the phrase "or held," as used in the quoted provision, should be understood as standing in apposition to the preceding word "subscribed," and as referring to stock acquired in like manner (ejusdem generis), "that is, by acquisition directly from the corporation."

We can not agree with this interpretation. The intent of the provision was to fix the liability upon all who were stockholders at the time the debt of the bank was created, regardless of the manner in which their stock was acquired. In our opinion the construction contended for would be not only strict but strained, and we can not adopt it. *Latimer* v. *Bennett, 37 Ga. App.* 246 (2) (139 S. E. 570) ; s. c. 167 *Ga.* 811 (2) (146 S. E. 762).

■ It appears that Mrs. Almond, the stockholder, was insane at the time the assessment was made against her, and also at the times when the superintendent mailed the notice of such assessment and issued the execution, and that she had no guardian. Because of these facts it is claimed that the execution was void and should be quashed.

There is no merit in this contention. Where, after incurring a liability, the debtor becomes insane, this fact will not prevent the creditor from bringing suit, and service upon such debtor is not only permissible but necessary. In *Scott* v. *Winningham, 79 Ga.* 492 (4 S. E. 390), the Supreme Court held: "Where suit was brought on a promissory note, and the declaration alleged that the maker had been adjudged a lunatic, and that the defendant had been appointed his guardian, and prayed process against such guardian, which was issued and served, but no process was prayed against the lunatic and no service was perfected upon him, the declaration was demurrable. Before the lunatic could be personally affected by a judgment on his contract, it was necessary that process should be prayed against him, should issue against him, and should be served upon him. When this has been done, a guardian ad litem may be appointed." See also *Stanfield* v. *Hursey, 36 Ga. App.* 394 (136 S. E. 826), and cit.

■ The execution was not levied until after Mrs. Almond's death and the appointment of G. L. A. Almond as her executor. This fact is shown by the entry of levy from which we have quoted in the statement above. In one of the grounds of the affidavit of illegality the executor claimed his exemption from suit for the period of twelve months as provided in the Code, and alleged, in effect, that the execution was proceeding illegally because of having been levied during this period. Counsel for defendant in error say that this ground could not have been sustained, because there is nothing to show the date either of the testator's death or of the

qualification of the executor. While this is true, it *does* appear that Mrs. Almond was in life on a certain date less than twelve months previous to the levy of the execution, when the court of ordinary appointed a guardian for her, but which guardian failed to qualify. It follows that the estate must have been in the hands of the executor less than twelve months before the execution was levied. Was it proper to levy such execution before the expiration of twelve months from the executor's qualification?

The law is that an executor or administrator shall have twelve months from the time of his qualification to ascertain the condition of the estate. Civil Code (1910), §§ 3997, 3892. The exemption, however, applies only to suits to recover a debt due by the decedent. Civil Code (1910), § 4015.

Counsel for defendant in error have cited *Ingram* v. *Hurt,* 10 *Ga.* 568, and *Brooks* v. *Rooney,* 11 *Ga.* 423 (8) (56 Am. D. 430). These cases sustain the proposition that where judgment has been obtained and an execution issued in the lifetime of the defendant, his subsequent death will not arrest the collection of the debt by a levy and sale under the execution, and that such proceeding is not stayed even during the twelve months' exemption period. In each of those cases, however, the executions were issued upon common-law judgments and constituted final process. The alleged debtor had had his day in court. Compare *Pursley* v. *Manley,* 166 *Ga.* 809 (2), 812 (144 S. E. 242).

The execution issued by the superintendent of banks is final process only in case it is not arrested by affidavit of illegality. In fact it is only a form of suit, and is subject to be defended upon various grounds, should the liability be contested. It is a mere means of bringing the defendant into court to be heard on such defenses as he may propose. *Bennett* v. *Wheatley,* 154 *Ga.* 591 (3) (115 S. E. 83), and cit. So we think that the levy of the same upon property in the hands of the executor amounted to a suit within the meaning of section 4015 of the Code.

Was the liability of the stockholder, as sought to be enforced by the superintendent, a "debt due by the decedent"? There seems to be a dearth of authority upon this question. The word "debt" as used in this section should be understood in its ordinary signification, and not in a technical sense. Civil Code (1910), § 4 (1). In *Epping* v. *Columbus,* 117 *Ga.* 263, 267 (43 S. E. 803), the Supreme

Court discussed the popular meaning of this word, as follows: "If a person unversed in the technical niceties of the law is asked what is the amount of his debts, his answer to the question in every instance would be an amount which would represent the present liability that he is under at the moment the question is answered. A farmer who had been so unfortunate as to be compelled to place a long loan upon his farm, if asked what was the amount of the debt upon his farm, would unhesitatingly answer by giving an amount which would represent the principal of the debt and any interest that was past due and payable at the time the inquiry was made. One who, in making a return of his property for taxation, is required to state . . the amount of solvent debts due him would not, in the case of a perfectly solvent debt, consider that he was under a moral obligation to return for taxation the value of the debt at any higher amount than one which would represent the principal and any interest that was past due at the time the return was made. It is useless to multiply illustrations. The debt of an individual, or a corporation, or the public, in its usual and popular sense, means the amount for which the individual or corporation or the public would be presently liable if called upon to discharge the obligation."

In Mills *v.* Scott, 99 U. S. 25 (25 L. ed. 294), an administrator was sued upon the stock liability of his intestate as a shareholder in the Merchants & Planters Bank of Savannah, the charter of which was, like that of the Elberton bank, granted by special act of the legislature, and provided that the persons and property of the stockholders should be liable for the redemption of the bills and notes of the bank at any time issued in proportion to the number of shares held by them. The immediate question for determination was whether the suit was barred by the statute of limitations. The court held against the bar upon the theory that the right to sue was suspended during the twelve months' exemption period, and that with this period excluded the suit was in time. The decision necessarily included a ruling to the effect that the action was one to which the exemption applied, and the liability involved was the same in character as that sought to be enforced in the present case. Other than Mills *v.* Scott, we have found no case, and none has been cited, which approaches a decision of the question presented. However, we are content to rest our judgment upon the reasoning of that case, and accordingly hold that after the

Elberton Loan and Savings Bank became insolvent and was taken over by the superintendent of banks, and after that officer had made assessments against the stockholders and issued executions thereon, and Mrs. Almond had died, the liability sought to be enforced by the execution against her was a debt due by the decedent within the provisions of the exemption statute. See, in this connection, Marfield v. Cincinnati &c. Traction Co., 111 Ohio St. 139 (144 N. E. 689, 40 A. L. R. 357).

We can think of no just ground upon which this claim should be permitted to proceed, while others, perhaps of higher dignity, should be halted for the common good of those interested in the estate. To make an exception in such a case might tend to interfere with the executor in his duty in regard to priorities (Civil Code of 1910, § 4000), as well as to draw him into litigation without allowing him sufficient time to ascertain the condition of the estate or to acquaint himself with other facts pertinent to his trust. The question of priorities would, of course, not be determinative, equity being available to prevent injustice where the law is inadequate to enforce the priorities which it prescribes (*Brooks* v. *Rooney,* supra) ; yet sections 4000 and 4015 are to be construed in pari materia and the provisions of the former may be considered in arriving at the true interpretation of the latter section.

It appears that the execution was issued, and the suit was thus begun, during the life of the testator. Nothing further was done until after her death and the appointment of the executor, when the execution was levied upon property of the estate. Since the executor was entitled to an absolute stay until after the lapse of twelve months from his qualification, it was his right to attack such levy on property in his hands, as he did in the affidavit of illegality. *Waters* v. *Hurst,* 12 *Ga. App.* 248 (77 S. E. 102) ; *Cunningham* v. *Schley,* 34 *Ga.* 395, 398; *Sapp* v. *McArdle,* 41 *Ga.* 628.

Although more than twelve months have now elapsed since the executor's qualification, we can not say that his objection to the levy has become moot. This case is distinguishable from *Ham* v. *Robinson Co.,* 146 *Ga.* 442 (91 S. E. 483). The protest in that case was merely against making the executrix a party to a pending suit, and the rule for that purpose was not heard in the trial court until more than twelve months after the executrix had qualified. Here an important step was taken *in the suit,* namely a levy upon property in

312

the hands of the executor, during the period when he was entitled to be let alone. The levy was illegal at the time it was made, and the lapse of time has not repaired the defect.

The court erred in not sustaining the affidavit of illegality to the extent of ordering the levy to be dismissed. This ruling, however, will not affect the validity of the execution itself.

What has been said will dispose of all grounds of the affidavit of illegality except such as have been abandoned.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*