JERNIGAN, guardian, *v.* RADFORD, next friend.

No. 11308. MAY 14, 1936.

*T. E. Hightower* and *W. H. White,* for plaintiff in error.
*Adams & Nelson,* contra.

BELL, Justice. J. P. Jernigan as guardian of Cora Radford, a lunatic, applied to the court of ordinary of Laurens County for leave to sell the lands of his ward for the purpose of paying debts. After citation, the application was granted in a regular term, no objection being filed. The guardian then proceeded to advertise the property for sale in accordance with the order, when Leo Radford, as next friend of an incompetent brother of the lunatic, filed a suit in equity to enjoin the sale on the sole ground that the court of ordinary had no jurisdiction to grant an order authorizing a guardian of the property of a lunatic to sell the property of his ward for the purpose of paying debts. The defendant filed an answer denying the conclusion of law stated in the petition and certain of the allegations of fact. At the trial term the case was submitted to the judge, without a jury, and was tried upon the pleadings alone. The court entered a decree enjoining the sale as prayed, and to this judgment Jernigan, guardian, excepted. No question has been raised as to whether the plaintiff, or the person for whom he sued, had such an interest in the property as to authorize the action, but the only question presented either in this court or the court below is one relating to the jurisdiction of the court of ordinary.

The ordinaries of the several counties of this State have authority to appoint guardians for lunatics. Code of 1933, § 49-601. "Guardians so appointed shall take the same oath and give a like bond as guardians of minors, and their powers, duties, and liabilities shall be the same and shall be exercised under the same rules and regulations." § 49-603. Since the guardian of a lunatic has the same authority as the guardian of a minor, the question arises as to what are the powers of a guardian of the latter class. "Every

guardian shall be allowed all reasonable disbursements and expenses suitable to the circumstances of the ward committed to his care. The expenses of maintenance and education must not exceed the annual profits of the estate, except by the approval of the ordinary previously granted. The ordinary may, in his discretion, allow the corpus of the estate, in whole or in part, to be used for the education and maintenance of the ward." § 49-202. By the act of 1889 (Ga. L. 1889, p. 156) it was provided that upon an order of a judge of the superior court any guardian may sell the whole or any part of the estate of his ward for reinvestment upon such terms and at such time and place as the judge may order. Code of 1933, §§ 49-203, 49-204. "All other sales of any portion of the property of the ward shall be made under the direction of the ordinary, and under the same rules and restrictions as are prescribed for sales by administrators of estates." § 49-205. An administrator, of course, may sell the property of his intestate for the purpose of paying debts, after first obtaining an order from the court of ordinary for that purpose. § 113-1706.

Either a minor or a lunatic may owe debts for which he can be sued. A minor, for instance, may under some conditions be liable on an executed contract for necessaries. Code of 1933, § 20-201. In *Rolfe* v. *Rolfe,* 15 *Ga.* 451 (2), it was held that if, before the appointment of a guardian, debts for necessaries be incurred by an infant, the guardian, after his appointment, must pay them out of the infant's estate, even though that estate be so small that the annual profits of it may not be sufficient for the infant's education and maintenance. See also *Oliver* v. *McDuffie,* 28 *Ga.* 522. A person may incur debts and then become insane before paying them. In such case he may be sued upon the obligations and judgments obtained against him. Code of 1933, § 38-1603 (1); *Foster* v. *Jones,* 23 *Ga.* 168; *Scott* v. *Winningham,* 79 *Ga.* 492 (4 S. E. 390); *Elliott* v. *Keith,* 102 *Ga.* 117 (29 S. E. 155); *Stanfield* v. *Hursey,* 36 *Ga. App.* 394 (136 S. E. 826); *Almond* v. *Mobley,* 40 *Ga. App.* 305 (3) (149 S. E. 293); *Burkhalter* v. *Virginia-Carolina Chemical Co.,* 42 *Ga. App.* 312 (2) (156 S. E. 272). See also, in this connection, *English* v. *English,* 149 *Ga.* 404 (100 S. E. 362). A judgment for a debt against either a minor or a lunatic would be of little value unless the property of the defendant could be sold under an execution, and such a sale

would be the legal and natural consequence unless the debt is paid. Where it appears that a just debt is in existence against either a minor or an insane ward, has the court of ordinary jurisdiction to order a sale of the ward's property by the guardian for the payment of such debt, or must the estate of the ward remain exposed to judgment, and then to a sale under legal process? In *Knapp* v. *Harris,* 60 *Ga.* 399 (2), this court, speaking through Justice Bleckley, said: "Equity may, in some cases, interfere with the administration of estates of deceased persons, or direct the management and disposition of property belonging to minors; but, generally, executors, administrators, and guardians are to resort to the court of ordinary for orders of sale, and such judgments as are necessary to supplement their general powers. If lawful debts are to be paid, and a sale of land for that purpose is needed, leave to sell is usually to be obtained from the court of ordinary, and not from a court of equity. This is now, and has long been, the system established in this State by statutory provisions." Although the question now presented was not involved in that case, the language used, especially in view of its source, is entitled to weight in the consideration of the question sub judice. For other language to the same effect, see the opinion of Simmons, Chief Justice, in *Crawford* v. *Broomhead,* 97 *Ga.* 614, 617 (25 S. E. 487). In 28 C. J. 1172, § 292, it is said, "A sale may generally be ordered, whenever necessary to pay the debts of the ward, or to discharge encumbrances on the property." A similar statement will be found in 32 C. J. 717, § 460. While the question in hand is one depending upon statute, these latter citations will illustrate that the order for sale, as involved in this case, was nothing strange in the realm of judicial proceedings. From the standpoint of reason and expediency, it might be of some importance whether a sale to pay debts is made by a guardian under an order of the court of ordinary, or by a sheriff in pursuance of a judgment and execution. The guardian is presumed to be friendly to the interests of his ward, and may select the time of sale, and otherwise protect the ward's estate. Again, the debt might be represented by a note, with a promise to pay attorney's fees, so that to suffer a judgment in favor of the creditor might result in materially greater cost and expense than would be necessary in a sale by the guardian.

Our conclusion is that the court of ordinary has jurisdiction to

order a sale by the guardian for such purpose; and that the conditions just stated may, with others, be considered in passing upon the application. In Greenbaum v. Greenbaum, 81 Ill. 367, it was held that a sale should not be ordered to pay a mortgage, unless it is shown to be more desirable to sell the land than to have it sold on foreclosure. In *Dowling* v. *Feeley*, 72 Ga. 557 (2), 564, it was said that the ordinary "represents the State, which, as parens patriæ, stands in loco parentis to minors, and does for them what it is reasonable to suppose their parent, if in life, would do, and what is for his family's interest and honor." The present case does not involve the question whether the insane person owed debts as stated in the application for leave to sell, or whether, if debts were in existence, the sale for the purpose of paying them was necessary or wise. Since the ordinary was empowered by law to entertain the application and to grant it if proper, these and like questions were concluded by the judgment. If the order should not have been granted, and there was fraud or imposition, a proceeding to set aside the judgment might be taken; but the judgment was not void for want of jurisdiction, and thus was not open to collateral attack. *Davie* v. *McDaniel,* 47 *Ga.* 195 (2); *New York Life Insurance Co.* v. *Gilmore,* 171 *Ga.* 894, 906 (157 S. E. 188).

The conclusion reached in this case is not contrary to any of the following decisions which were cited by the defendant in error: *Little* v. *West,* 145 *Ga.* 563 (89 S. E. 682); *Sturgis* v. *Davis,* 157 *Ga.* 352 (121 S. E. 318); *McQueen* v. *Fisher,* 22 *Ga. App.* 394 (95 S. E. 1004); *New York Life Insurance Co.* v. *Gilmore,* 40 *Ga. App.* 431 (149 S. E. 799); *Paulk* v. *Roberts,* 42 *Ga. App.* 79 (155 S. E. 55).        *Judgment reversed. All the Justices concur.*